**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Harry T. HANLEY, Defendant–Appellant (Two Cases).**

**Nos. 91–5372, 91–5413.**

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1992.

Decided Aug. 28, 1992.

As Amended Oct. 5, 1992.

Wayne Dillard Inge, Roanoke, Va., argued for defendant-appellant.

R. Brandon Johnson, Asst. U.S. Atty., Charleston, W. Va., argued (Michael W. Carey, U.S. Atty., and John C. Parr, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before WILKINSON and LUTTIG, Circuit Judges, and KIDD, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

## OPINION

KIDD, Senior District Judge:

Harry T. Hanley appeals his conviction on several drug related charges. We find no reversible error and affirm.

### I.

Harry T. Hanley was indicted on February 12, 1991, and charged with one count of conspiracy to distribute cocaine, and three substantive counts of distribution of cocaine and aiding and abetting the same, occurring on July 25, 1990, August 10, 1990, and August 14, 1990, respectively. Counsel was appointed to represent Hanley, on March 19, 1991. On March 28, 1991, Hanley entered his not guilty plea and trial was set for May 14, 1991. On March 29, 1991, Hanley's counsel withdrew and another attorney was appointed. On April 2, 1991, the second attorney withdrew and a third attorney, Thomas Czarnik, was then appointed. On April 4, 1991, Mr. Czarnik filed pretrial motions for Hanley, as well as a motion to continue the trial. On May 17, 1991, the district court granted the motion for continuance and rescheduled the trial for June 11, 1991. On May 6, 1991, Mr. Czarnik filed another motion for continuance for Hanley, as well as a motion to compel discovery by the government. On June 5, 1991, the district court granted the continuance motion and rescheduled the trial to July 17, 1991.

On July 3, 1991, the district court revoked Hanley's bond and ordered him detained. On July 5, 1991, Mr. Czarnik filed his motion to withdraw as counsel. Mr. Czarnik was permitted to withdraw and Hanley's fourth counsel, Mark Wills, was appointed. Mr. Wills, on July 10, 1991, filed Hanley's third motion for continuance. On July 15, 1991, the district court granted the motion and continued the trial to August 22, 1991. On August 15, 1991, one week before trial, Mr. Will's filed his motion to withdraw as counsel, which was immediately set for hearing the next day. After the hearing, the district court denied counsel's motion, finding that the defendant's allegations against his counsel were without merit, and were asserted by the defendant as a ruse to delay the trial.

On August 22, 1991, trial commenced as scheduled. The evidence submitted against Hanley consisted of electronically monitored and recorded cocaine transactions involving Hanley, as well as the testimony of an informant, Michael Worth, and undercover state trooper, Joe Tyree, both of whom corroborated the accuracy of the tapes and the presence of Hanley at all of the cocaine transactions. The first transaction occurred on July 13, 1990, at Bobby Morton's house in Bluefield, West Virginia. Morton and Hanley agreed to sell a half-ounce of cocaine to Worth and Tyree. Hanley then took Worth to get the cocaine. However, en route, Hanley spotted a state

trooper in a surveillance van and aborted the transaction.[1]

On July 25, 1990, Hanley went to Worth's house to confirm that another previously arranged transaction of a half ounce of cocaine was still on. Hanley, though, did not want Tyree present during the transaction. Worth then went to Morton's house where Hanley was to meet him with the cocaine. Hanley arrived with a package of cocaine. Worth then gave the money for the cocaine to Morton, who put it on the bed. Hanley picked it up, counted it, and placed it in his pocket. Hanley then negotiated another cocaine transaction with Worth.

On August 10, 1990, Tyree and Worth went to Morton's house to wait for Hanley, whom Morton referred to as "his man." Morton went outside to meet Hanley, where Tyree saw Hanley hand a cellophane package to Morton in exchange for money. Morton then gave the cellophane package to Worth. The cellophane package contained cocaine.

The third charged cocaine transaction was arranged for August 14, 1990. While at Worth's house, Tyree watched Hanley drive a White Corsica towards Morton's house. Worth then called Morton, who told him he would call back in 15 minutes. Morton called a few minutes later and told them to come over. Upon arrival at Morton's house, Morton sold Tyree and Worth an ounce of cocaine. Morton then told them he had to beep "his man" and was dialing the phone when they left. While driving away, they saw Hanley pass by, driving the White Corsica toward Morton's house. Hanley had purchased a beeper the day before.

Hanley denied having participated in any of the cocaine transactions charged in the indictment. Hanley also claimed that the United States Attorney illegally altered the tapes to make his voice appear, and that

different tapes were provided to Mr. Czarnik, other than the tapes used at trial. The district court, after excusing the jury for the day, held a hearing on Hanley's allegations regarding the tapes. Hanley and his counsel, and counsel for the government were present. Defense counsel Wills informed the district court that he believed the government's tapes were identical to the ones he received from the government, and were identical to the tapes provided to Mr. Czarnik. Further, the government testified to the district court that the tapes were the originals, and that exact copies were provided to defendant's counsel. Defendant persisted in his argument that the tapes were not the tapes previously provided to him.

The district court required the government to play all of the tapes that evening for the defendant and his counsel. The next morning, Hanley and his defense counsel informed the district court that they listened to all of the tapes, with defense counsel again stating that the tapes were the same as the ones provided by the government and the defendant still disagreeing, asserting that they were different and that the government placed his voice on these tapes. The district court permitted the tapes to be played to the jury, ruling that defendant's argument went not to admissibility, but to credibility.

The jury convicted Hanley on all counts. The district court sentenced him to 200 months of imprisonment and three years supervised release. This appeal followed, challenging only his conviction.

## II.

In his first issue presented for review, Hanley claims that the district court abused its discretion by denying counsel's motion to withdraw and appointing him substitute counsel.[2] We review such a

---

1. Hanley was not charged with this attempted distribution.

2. Incorporated into this issue for review is a claim that Hanley was denied effective assistance of counsel. An ineffective assistance of counsel claim should usually be raised by mo-

tion under 28 U.S.C. § 2255, not by direct appeal, unless it conclusively appears in the trial record itself that the defendant was not provided with effective representation. *United States v. Mandello,* 426 F.2d 1021 (4th Cir.1970). This clearly is not such a case. Accordingly, we

claim under the abuse of discretion standard. *United States v. Gallop*, 838 F.2d 105 (4th Cir.1988). In evaluating whether a district court abused its discretion in refusing to substitute counsel, an appellate court considers: (1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the defendant's complaint; and (3) whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense. *Id.* at 108. After considering these factors, we cannot find that the district court abused its discretion in refusing to permit counsel to withdraw and appoint substitute counsel.

Hanley's counsel, Mark Wills, filed his motion to withdraw one week before trial. The district court had permitted three prior appointed counsel to withdraw and, as a consequence, had continued the trial date three previous times. Furthermore, Hanley's last appointed counsel, Tom Czarnik, filed his motion to withdraw twelve days before trial, asserting practically the same ground, namely, being accused "of trying to railroad" Hanley.

With this background, the district court held a hearing to inquire into Hanley's complaint. Defense counsel represented that Hanley did not agree with the strategy of the defense; that Hanley wanted Wills to withdraw as counsel; that Hanley intended to file an ethics complaint against Wills; that Hanley believed Wills was acting in collusion with the Assistant United States Attorney who was prosecuting the case; and, as a result, Wills believed he could no longer properly represent Hanley. Hanley testified that all Wills wanted him to do was plead guilty. Wills would not defend him in the manner Hanley wanted. Hanley admitted to the district court that he had the same complaint against Mr. Czarnik, and that he had also filed an ethics complaint against Mr. Czarnik.

█ At the conclusion of the hearing, the district court expressed its opinion that Wills had done nothing wrong. The district court stated:

decline to address Hanley's claim of ineffective

I'm not going to tolerate this obvious delaying tactic on the part of the defendant. This is the second time he's followed this procedure and I'm not going to tolerate it. It's just a ruse to delay things and he could go on ad infinitum saying, "I don't get along with this lawyer. He's not doing what I want him to do, and I'm going to file an ethics complaint and, therefore, we're in an adversarial position and, therefore, he can't represent me." That's all a ruse and the Court sees through it and will not tolerate it.

I'm denying the motion for you to withdraw, Mr. Wills, and I'm advising Mr. Hanley that Mr. Wills is a fine attorney. He's an officer of this Court. He is experienced and you could not be in better hands. And my advice to you is to cooperate with him.

J.A. 29–30. We believe that the district court was fully justified in the position it took. "A request for change in counsel cannot be considered justifiable if it proceeds from a transparent plot to bring about delay." *United States v. Gallop, supra* at 108. Mr. Hanley's plot could not have been more transparent.

█ Finally, there is *no evidence in the record* to indicate that the conflict between Hanley and defense counsel Wills was so great that it resulted in total lack of communication. On the contrary, Wills assisted Hanley's defense by vigorously cross-examining Worth and Tyree and the other witnesses for the government. In fact, Wills conducted an appropriate direct examination of Hanley when he took the stand in his own defense, clearly putting Hanley's claim before the jury that he was not involved in any of the drug transactions.

### III.

█ In his next issue presented for review, Hanley claims that he was denied due process of law when the trial court inadvertently instructed the jury as follows:

On the other hand, if a reasonable doubt exists in your mind concerning the

assistance of counsel.

guilt of the defendant as to one or more of the counts, then it will be your duty to find the defendant guilty as to such count or counts.

J.A. 457. Unfortunately, neither counsel for the defendant nor the government, nor the district court, noticed that the word "not" was left out of the phrase "it will be your duty to find the defendant *not* guilty as to such count or counts." Otherwise, it would have been easily corrected and the situation remedied.

Since no objection was made, we review for plain error. Rule 52(b), Federal Rules of Criminal Procedure, provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

[F]ederal courts have consistently interpreted the plain-error doctrine as requiring an appellate court to find that the claimed error not only seriously affected "substantial rights," but that it had an unfair prejudicial impact on the jury's deliberations. Only then would the court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice.

*United States v. Young,* 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985). We have no doubt that the error did not have an unfair prejudicial impact on the jury's deliberations, or in any way undermine the fairness of the trial or contribute to a miscarriage of justice.

When viewing the instructions as a whole, the jury was properly instructed several times regarding the burden placed upon the government to prove the defendant guilty beyond a reasonable doubt.

... The presumption of innocence alone is sufficient to acquit a defendant unless you are satisfied beyond a reasonable doubt of the defendant's guilt after careful and important consideration of all the evidence in the case.

In this case, as in every criminal case, the burden of proof is upon the Government to establish, first, the fact that the crime charged was committed; and, second, that the defendant on trial is guilty

of the commission of that crime beyond a reasonable doubt.

The burden never shifts to the accused, but remains with the Government throughout the trial.

The law does not require a defendant to prove his innocence, to produce any evidence, or to call any witnesses.

A reasonable doubt means in law just what the words imply.

J.A. 441–42.

In summary, before you return a guilty verdict on Count One, you must find [the Government] established beyond a reasonable doubt that the conspiracy actually existed as charged, and that the defendant willfully joined this conspiracy with the specific intent of accomplishing the unlawful purpose of distributing cocaine, also known as coke. If you have any reasonable doubt whatsoever as to either of these two elements, then you must return a verdict of not guilty on Count One.

In order to find the defendant guilty of the offenses charged in Counts Two, Three, and Four, the Government must prove to you the following things beyond a reasonable doubt:

J.A. 450–51.

Furthermore, when read together with the preceding paragraph, the erroneous instruction, as given, is internally inconsistent and, simply makes no sense. The preceding paragraph explains that if the evidence "convinces you beyond a reasonable doubt that the defendant is guilty" then it is the jury's duty to convict. J.A. 457. The incorrect paragraph begins: *"On the other hand,* if a reasonable doubt exists," but then continues to read that the defendant should likewise be found guilty. We simply do not believe that a reasonable jury would have been mislead by this isolated mistake, especially considering the idea ingrained in the psyche of all Americans that a defendant is presumed innocent unless found guilty beyond a reasonable doubt by a jury of his peers.

Additionally, the burden of proof was argued by both counsel in their closing

arguments. Finally, the evidence presented against Hanley was overwhelming. Accordingly, we are unable to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice. There was no plain error.

### IV.

Hanley's final issue for review pertains to the closing argument of the government's attorney when he mis-spoke, implying that Hanley could be convicted by a majority vote. Since (1) no objection or motion for a mistrial was made by the defendant; (2) the district court fully instructed the jury regarding unanimity of its verdict; and (3) the verdict was, in fact, unanimous, as reflected by the individual polling of the jurors after their return, there was no plain error. *United States v. Rogers*, 853 F.2d 249, 252–53 (4th Cir.1988).

### V.

None of Hanley's issues on appeal constitute reversible error, so we affirm his conviction on all counts.

AFFIRMED.