64 F.3d 660
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Keith Bernard JOHNSON, a/k/a Bongi Denard Crane, Defendant-Appellant.
 No. 94-5288.
 United States Court of Appeals, Fourth Circuit.
 Argued May 5, 1995.
Decided Aug.14, 1995.
 
 ARGUED: Denise Charlotte Barrett, Assistant Federal Public Defender, Baltimore, MD, for Appellant. Brian Lee Whisler, Assistant United States Attorney, Charlotte, NC, for Appellee. ON BRIEF: James K. Bredar, Federal Public Defender, Baltimore, MD, for Appellant. Mark T. Calloway, United States Attorney, Charlotte, NC, for Appellee.
 Before HALL, WILKINS, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 On December 9, 1993, a grand jury in the Western District of North Carolina returned a one-count indictment against Appellant Keith Johnson, a/k/a "Bongi[1] Crane," (Johnson) for failure to surrender for service of sentence, in violation of 18 U.S.C. Sec. 3146(a)(2) (1988). A jury subsequently convicted Johnson on February 8, 1994. Thereafter, on March 31, 1994, the district court sentenced Johnson within the appropriate guidelines range to sixteen months imprisonment and two years of supervised release.[2]
 
 
 2
 Johnson now appeals various aspects of his conviction. First, Johnson argues that the district court impermissibly allowed into evidence hearsay statements and evidence of Johnson's character. Johnson further contends that the prosecutor abused the questioning process in such a manner as to undermine the fairness of the trial. Second, Johnson argues that the district court erred by not inquiring into or granting his requests for substitute counsel. We find no merit to Johnson's initial group of objections which were raised for the first time on appeal, and therefore we affirm. As to Johnson's claims of ineffective assistance of counsel and requests for substitute counsel, we remand to the district court for consideration as a motion brought under 28 U.S.C. Sec. 2255 (1988), in accordance with our opinion in United States v. Stockstill, 26 F.3d 492, 498 (4th Cir.), cert. denied, 115 S.Ct. 345 (1994).
 
 I.
 
 3
 Viewed in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80 (1942), the facts are as follows. After his sentencing for federal counterfeiting violations, on or about July 15, 1993, Johnson made five or six telephone calls to the United States Marshal's Office in Charlotte, North Carolina, inquiring when he would receive his letter of designation. On September 2, 1993, Elizabeth Bass, an administrative assistant in the Charlotte office, personally served Johnson with the letter directing that he report to the Federal Correctional Institute in Manchester, Kentucky by twelve o'clock noon on September 17, 1993. She further informed Johnson that if he failed to appear, a warrant would issue for his arrest.
 
 
 4
 By memorandum dated September 22, 1993, the Manchester Federal Correctional Institute informed the Charlotte Marshal's Office that Johnson had failed to report as scheduled. Consequently, on September 24, 1993, Deputy Marshal Jay Bigelow filed a criminal complaint and affidavit.[3] Bigelow then began his investigation which revealed that Johnson had abandoned his apartment in Charlotte and "fled the area." (J.A. 34.) Bigelow also discovered that Johnson had originally provided the Marshal's Office with an alias, Bongi D. Crane. Upon review of Johnson's file, Bigelow determined that the only possible alternate addresses were in Georgia. Thus, he assembled the information obtained in his investigation and forwarded it to the Marshal's Office in Atlanta, Georgia, for follow-up.
 
 
 5
 Based upon a "collateral" lead provided by Bigelow, Deputy Marshal Joel Wesley Johnson (Marshal Johnson) continued to try to locate Johnson from the Atlanta office. Following another lead from Bigelow, on October 18, 1993, Marshal Johnson approached a residence on Misty Valley Road in Decatur, Georgia. The door was answered by Ms. Chevron Meadows, Johnson's sister, who stated that Johnson did not live at that address and that she had not seen him for some time. As Marshal Johnson departed the Misty Valley Road residence, he noted the license numbers of vehicles in the immediate vicinity of the residence. One of the license plates, on a 1983 Buick, was registered in North Carolina to a Bongi C. Denard, a name sufficiently similar to Johnson's alias, Bongi Crane, to suggest that he was the same person. Marshal Johnson, therefore, watched the home for the next few days and on October 21, 1993, apprehended Johnson at his sister's residence. When approached by the Marshal, Johnson stated "I'm the one you're hunting." (J.A. 70.)
 
 
 6
 The jury convicted Johnson on the one-count indictment. Thereafter, following allocution at which Johnson admitted his guilt and apologized to the court, the district court sentenced Johnson to sixteen months imprisonment and two years of supervised release.
 
 II.
 
 7
 Because Johnson's trial counsel failed to object to the Government's evidence or questioning, we review these issues for plain error. Fed.R.Crim.P. 52(b); United States v. Mitchell, 1 F.3d 235, 239 (4th Cir.1993). Thus, we are confined to correcting only " 'those errors that seriously affect the fairness, integrity or public reputation of judicial proceedings.' " Mitchell, 1 F.3d at 239 (quoting United States v. Young, 470 U.S. 1, 15 (1985)). As to Johnson's request for substitution of counsel, we review for abuse of discretion by the district court. United States v. Hanley, 974 F.2d 14, 16-17 (4th Cir.1992).
 
 A.
 
 8
 Johnson argues that on three occasions during the presentation of its case, the Government elicited from its witnesses impermissible hearsay testimony. First, Johnson objects to the testimony of Marshal Bigelow about his conversation with Johnson's leasing agent. The agent "indicated that the person who had been living there, who was Bongi Crane, had fled the area." (J.A. 34.) Johnson also objects to the statement incorporated into Bigelow's collateral report: "Interviews conducted of two associates of subject indicate that he very well may have returned to the Atlanta area, as previously mentioned by one of the leasing assistants at subject's last known address." (Appellant's Brief at 6; J.A. 37).
 
 
 9
 Johnson contends that these statements are "textbook hearsay" admitted into evidence in contravention of Rules 801 and 802 of the Federal Rules of Evidence. In support, he argues that they constituted out-of-court statements to prove that, rather than reporting to serve his prison term, he fled. We need not resolve, however, the admissibility of these statements because Johnson conceded their accuracy: he failed to report to the Manchester Federal Correctional Institute. The admission of these statements was certainly not plain error, and furthermore, given Johnson's concession of his failure to report, was harmless. We, therefore, affirm as to this issue.
 
 
 10
 Second, Johnson challenges for the first time on appeal the admission of the testimony of Joyce Knight, a secretary to the United States Probation Office, that she received a call from Johnson who stated that he was calling from the Flatbush County Jail. On direct examination by the Government, Knight testified:
 
 
 11
 On October 18th, I received a telephone call by someone identifying himself as Bonji Crane, and said he was calling from the Flatbush County Jail in Brooklyn, New York to let Ms. Banks know that he was not running from having to report to prison, and said that he had been picked up on August 29th of '93 by [a] Secret Service Agent, and had been in jail since that time.
 
 
 12
 (J.A. 47.) Knight later testified that she subsequently determined that although there was a Flatbush, New York, there was no Flatbush County Jail from which Johnson could have called. Her testimony was corroborated by that of Elizabeth Bass who testified on direct examination for the Government "that there was no such county jail, and that's not where federal inmates were housed." (J.A. 55-56.) Johnson challenges the admission of the testimony of Knight and Bass indicating that they learned that there was no Flatbush County Jail.
 
 
 13
 As to Knight's account of the substance of Johnson's call, this testimony qualifies as non-hearsay since it comprises "[Johnson's] own statement in either an individual or a representative capacity," offered against him as a party in this litigation. Fed.R.Evid. 801(d)(2). Thus, the trial court did not commit plain error in allowing its admission. As to the statements of both Knight and Bass about the nonexistence of a Flatbush County Jail, their testimony in this regard merely evinced knowledge about the existence of the jail derived from conversations with other law enforcement personnel. The only hearsay statement offered on that issue was Bass's brief testimony to the assertion of an information operator that "there was no such jail." (J.A. 56.) Although technically error, in light of its cumulative character and given the other testimony on the same question from Knight and Bass, we find any error to be harmless. We therefore affirm as to this issue.
 
 B.
 
 14
 Next, Johnson argues for the first time on appeal that the Government wrongfully introduced evidence of Johnson's "argumentative character" and "bad attitude" contrary to Rule 404 of the Federal Rules of Evidence. In particular, Johnson objects to testimony elicited from Joyce Knight. During the Government's case-in-chief, Knight described her last contact with Johnson, portraying him as "usually [having] a rather bad attitude each time he would come in" and as "just kind of argumentative." (J.A. 47.) Johnson asserts that the Government's introduction of this evidence violated the well-established rule that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed.R.Evid. 404(a).
 
 
 15
 Rule 404(b) provides that evidence of other crimes, wrongs, or acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). These exceptions to the inadmissibility of prior bad acts evidence are broadly construed, effectuating the principle that "evidence of prior bad acts is admissible unless it is introduced for the sole purpose of proving criminal disposition." United States v. Russell, 971 F.2d 1098, 1106 (4th Cir.1992), cert. denied, 113 S.Ct. 1013 (1993). Because Johnson's argumentative demeanor during conversations with Knight does not rise to the level of a crime, wrong, or act contemplated by Rule 404(b), we conclude that the district court did not commit plain error in admitting the testimony of Knight. We therefore affirm as to this issue.
 
 C.
 
 16
 Johnson further challenges the propriety of his cross-examination by the Government. In particular Johnson contends that the Government sought to "browbeat, ridicule and mock Mr. Johnson rather than to elicit the truth." (Appellant's Brief at 12). Johnson also identifies two instances of improper leading questions which he contends constitute reversible error. In particular he argues that during the testimony of Marshal Bigelow, the Government, by commenting on Johnson's "fugitive" status, sought to lead the witness to express an opinion as to the ultimate legal question at issue: whether Johnson knowingly failed to surrender for service of his sentence. Johnson further argues that the Government, during its direct examination of Kelly Nesbitt, posed a leading question, running the risk of supplying the witness with a false memory of events.[4] Again, we review for plain error.
 
 1.
 
 17
 As to the cross-examination of Johnson by the Government, Johnson objects to the following colloquy:
 
 
 18
 Q. Let me show you what has been admitted as Government's Exhibit 5 [the letter of designation], Mr. Johnson, and ask if you can recognize that letter?
 
 
 19
 A. I don't recognize this letter at all.
 
 
 20
 Q. You have never seen that?
 
 
 21
 A. No, I haven't.
 
 
 22
 Q. You were never handed that letter, never seen it in your life.
 
 
 23
 A. No, that's the truth.
 
 
 24
 Q. So, somebody went to the Marshal's office on September 2, 1993, and introduced themselves as Bonji Crane--actually what happened is that somebody went to the probation office first on September 2nd, signed in as Bonji Crane, and then went downstairs and impersonated you again to the Marshal's office, and said, "Hello, I'm Bonji Crane, and I'm here to get my designation letter to go to prison."
 
 
 25
 A. No, sir. And it wasn't me.
 
 
 26
 Q. So, if it wasn't you, it was somebody else, it must have been, right?
 
 
 27
 A. It didn't go that way at all. It didn't go that way at all, because--
 
 
 28
 Q. What I'm getting at, see, Ms. Bass testified this morning that somebody came to her office, and she handed them a designation letter that I just showed you. Mr. Nesbitt, the Supervisory Marshal, witnessed that, and said they recognized you from past dealings with the prior sentence. They handed you that letter, you discussed it, you discussed what you need to take to jail, and you're saying that wasn't you.
 
 
 29
 A. Okay. That wasn't me that [sic] a letter from her, and she didn't give me a letter, and that's the truth. She didn't give me--I didn't receive a letter at all.
 
 
 30
 Q. So she made that up?
 
 
 31
 A. She had to, because she didn't.
 
 
 32
 Q. Ms. Bass made that up and Mr. Nesbitt made it up, that you were there receiving a designation letter, right?
 
 
 33
 A. Mistakes do happen within your system, you know. I don't know what's going on, but my situation, I didn't get a letter. If I got the letter, believe me, I would have went [sic] to my designation. I didn't receive a letter, but I cooperatively went inside of the fingerprinting room, and got fingerprints, and that was about it. No one else was in the office.
 
 
 34
 Q. So what you're telling this Court, under oath, is that the testimony of Ms. Bass and Mr. Nesbitt is fabricated. They made up, because you weren't there to receive the letter.
 
 
 35
 A. I'm not calling her a liar or anything, but I would like to say that mistakes do happen.
 
 
 36
 (J.A. 88-90.)
 
 
 37
 In determining whether the Government counsel improperly cross-examined Johnson, and "so prejudiced the trial process as to require reversal, we apply a two-prong test." United States v. Bennett, 984 F.2d 597, 608 (4th Cir.), cert. denied, 113 S.Ct. 2428 (1993). Johnson "must demonstrate that: (1) the remarks or conduct were improper, and (2) the remarks prejudicially affected his rights so as to deprive him of a fair trial." Id. (citing United States v. Hernandez, 779 F.2d 456 (4th Cir.1985)). The record reflects that Government counsel was cross-examining Johnson, a hostile witness, in an effort to impeach his credibility and expose what it considered to be a fabricated defense. Although vigorous, the Government's cross-examination did not overstep the bounds of "propriety and fairness" as announced by the Supreme Court in Berger v. United States, 295 U.S. 78, 84 (1935).[5] Thus, we discern no plain error in allowing the jury to consider this evidence in reaching its verdict.
 
 2.
 
 38
 As to the testimony of Marshal Bigelow, by which Johnson alleges the Government improperly commented on Johnson's "fugitive" status, we discern no error of such magnitude that warrants reversal under the plain error rule. Finally, as to the Government's question to Nesbitt regarding whether he witnessed the delivery of the designation letter, we must reject Johnson's characterization of this question as leading, based upon the context in which the question was asked. Our review of the Government's direct examination of Nesbitt reveals that the phrase "when he came in the Marshal's office on the second" refers only to Nesbitt's affirmative response to the previous question and does not lead Nesbitt beyond his immediately preceding statement that indeed Johnson had entered the Marshal's Office on September 2, 1993.[6] When viewed in the full context of the testimony preceding the question which Johnson seeks to characterize as leading, we are unable to discern any reversible error.
 
 III.
 
 39
 We next confront Johnson's argument that his Sixth Amendment right to counsel was violated when the district court refused to inquire into Johnson's repeated complaints about ineffective counsel or grant his request for substitution of counsel. We first consider Johnson's substitution request and then proceed to his contentions of ineffective assistance of counsel.
 
 A.
 
 40
 "An essential element of the Sixth Amendment's protection of right to counsel is that a defendant must be afforded a reasonable opportunity to secure counsel of his own choosing." United States v. Gallop, 838 F.2d 105, 107 (4th Cir.), cert denied, 487 U.S. 1211 (1988). This right, however, is not absolute. The determination of whether to grant a motion for substitution of counsel is within the discretion of the trial court, and the court may consider "the countervailing state interest in proceeding on schedule." Id. at 108.
 
 
 41
 In evaluating whether the trial court abused its discretion by denying defendant's motion, we consider the following factors: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the attorney/client conflict was so great that it resulted in a total lack of communication that prevented an adequate defense. Id. In Gallop, the defendant moved for substitution of counsel only five days before trial, and again the day before trial when he fired his second attorney. We affirmed the district court's denial of the motion, noting the district court's finding that this was the second time defendant had fired counsel as a delay tactic. Id.
 
 
 42
 We reached a different result, however, in United States v. Mullen, 32 F.3d 891, 895-98 (4th Cir.1994). In Mullen, defendant's motion was timely--it was filed nearly a month before trial. Id. at 896. Furthermore, any delay caused by the motion was the fault of the govern ment for failing timely to call the motion the previous week. Id. It was also clear that communications had completely broken down between defendant Mullen and her counsel. Id. at 896-97. Thus, we concluded that the district court abused its discretion in denying Mullen's motion. Id. at 898.
 
 
 43
 In this case, Johnson filed his first motion for substitution of counsel over a month after trial, but prior to sentencing. Based solely upon Johnson's untimeliness, we discern no abuse of discretion in the district court's refusal to grant the motion for substitution of counsel. We therefore need not consider the two remaining factors, and we affirm on this issue.[7]
 
 B.
 
 44
 Construing Johnson's pro se filings as claims of ineffective assistance of counsel, however, we reach a different result and remand to the district court for further proceedings. Johnson's claims should have been raised in the first instance in a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. Sec. 2255 (1988). Stockstill, 26 F.3d at 497. In the instant appeal, as in Stockstill, the district court evaluated Johnson's claims under Fed.R.Crim.P. 33 criteria for a new trial rather than the factors for determining ineffective assistance of counsel articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). See Stockstill, 26 F.3d at 498. We, therefore, remand to the district court with instructions to consider Johnson's motions as Sec. 2255 motions and to develop and assess a record of the facts relating to the ineffective assistance claims.
 
 IV.
 
 45
 Discerning no "errors that seriously affect the fairness, integrity or public reputation of judicial proceedings," Mitchell, 1 F.3d at 239, we find no merit in Johnson's objections to the district court's admission of evidence or the Government's questioning. We therefore affirm. As to Johnson's claim of ineffective assistance of counsel, we remand to the district court for proper consideration as a motion brought under 28 U.S.C. Sec. 2255.
 
 
 46
 AFFIRMED IN PART; REMANDED IN PART WITH INSTRUCTIONS.
 
 
 
 [1]
 The record below alternately refers to Keith Johnson's alias as "Bongi" and "Bonji." For the sake of consistency we adhere to the spelling as reflected on the docket sheet and the indictment
 
 
 [2]
 In determining Johnson's sentence, the court calculated a total offense level of eleven and a criminal history category of II resulting in an imprisonment range of ten to sixteen months. The Government's motion for a perjury enhancement pursuant to U.S.S.G. Sec. 3C1.1 (1994) was denied, and the district court sentenced Johnson within the applicable guideline range to sixteen months imprisonment
 
 
 [3]
 Testimony at trial revealed that due to a clerical error, the complaint was incorrectly dated September 14, 1993. Mr. Bigelow testified that the complaint was signed and filed on the same day, September 24, 1993
 
 
 [4]
 The objected-to language states: "When [Johnson] came in the Marshal's office on the second, did you witness the hand delivery of the designation letter that has been offered as [a] Government Exhibit?" (J.A. 61.)
 
 
 [5]
 In Berger, the Supreme Court found that the prosecutor went too far and:
 was guilty of misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and, in general, of conducting himself in a thoroughly indecorous and improper manner.
 Id. On this record, we are unable to discern the seriousness and scope of prosecutorial abuse enumerated by the Supreme Court in Berger.
 
 
 [6]
 The full record here reflects permissible questioning by the Government:
 Q. What was the nature of your dealings with the defendant?
 A. Mr. Crane as we knew him, numerous times when he was initially arrested, at various court appearances and sentencing, and also on the day, September 2nd, when [he] came into the Marshal's office.
 Q. When he came in the Marshal's office on the second, did you witness the hand delivery of the designation letter that has been offered as Government Exhibit ?
 A. Yes, sir. I was in the front of the office when Mr. Crane came into the Marshal's office.
 (J.A. 61.)
 
 
 [7]
 Because Johnson's motion was filed so late in the proceedings, any dissatisfaction with counsel should have been raised not as a motion for substitution, but rather as a claim for ineffective assistance of counsel pursuant to 28 U.S.C. Sec. 2255