**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                No. 96-4137

DONTE MIGUEL ROWLEY,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-94-358)

Submitted: June 10, 1998

Decided: July 24, 1998

Before WILKINS, HAMILTON, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Anthony Bornstein, WASHINGTON COLLEGE OF LAW, Washington, D.C., for Appellant. Lynne A. Battaglia, United States Attorney, Robert R. Harding, Assistant United States Attorney, Illene J. Nathan, Special Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Donte Miguel Rowley of killing in furtherance of a drug conspiracy in violation of 21 U.S.C.A. § 848(e) (West Supp. 1998) and he pled guilty to conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (1994). The court sentenced Rowley to life imprisonment and three hundred months, respectively. Rowley appeals his conviction and sentence alleging that the trial court's refusal to grant a mistrial and replace Rowley's attorney when he notified the court during the trial of his upcoming suspension from the Maryland Bar violated Rowley's Sixth Amendment right to counsel. Rowley further contends that the trial court's admission of certain propensity evidence violated Rowley's due process rights to a fair trial. Finding no reversible error, we affirm.

The evidence presented at trial disclosed that Donte Miguel Rowley was a leader in a crack distribution organization. Andre Robinson, the victim, worked within the organization. Upon receiving a call at approximately 2:00 a.m. on May 29, 1994, police went to Robinson's apartment and found Robinson dead with two gunshot wounds to the back of his head. The mattress in the bedroom had been ransacked. Police estimated the death to have occurred no more than one hour prior to their arrival.

Testimony was introduced that in 1993, a dispute developed between Rowley and Robinson over drug money. In a post-arrest statement Rowley admitted that he kept large amounts of cash in a "Charlie Rudo" bag in Robinson's apartment, which Rowley claimed was missing the day after the murder. A witness testified that he saw both Rowley and Robinson on the night of the murder at approximately 11:00 p.m. in front of Robinson's apartment. Some time after that he heard three gunshots and saw Rowley in front of the apart-

2

ment. Silvester Taylor, a neighbor of Robinson, testified that at approximately 2:00 a.m. that night, as he was returning home, he heard gunshots from Robinson's apartment. As he peered out of his curtain window, he saw two males walk from Robinson's apartment and towards the parking lot. He testified that he believed one of the males was Rowley, whom he had seen at Robinson's apartment several times in the past.

Taylor's seventeen-year-old stepdaughter, Melody McLeod, also testified that she had seen Rowley at Robinson's apartment on several occasions. The week prior to the murder she saw money in both the bedroom closet and under the mattress of Robinson's apartment. On the afternoon of May 28, 1994, McLeod observed Robinson, after talking with his mother on the phone, take a Charlie Rudo tennis shoe bag with a drawstring, go into the bedroom, come out with the bag packed with something, and leave the apartment. That night, just before 2:00 a.m., McLeod observed through her open window, Rowley knock on Robinson's door and say, "Come open the door." After Rowley identified himself, Robinson let him into the apartment. McLeod then heard the volume of the music go up, loud voices, and gunshots. Before noon on the same day, several hours after the murder, Rowley came to the apartment complex and stated to both Taylor and McLeod when he saw them, something to the effect of "You know it wasn't me, right?"

During the trial, Rowley's appointed attorney, Allen Drew, notified the court that he would be suspended from the bar for a year. The suspension would go into effect in thirty days, after the completion of Rowley's trial. The suspension was related to the handling of an escrow account in a bankruptcy case several years earlier. Upon the court's inquiry, Rowley indicated that he was satisfied with Drew's representation. Drew further indicated that the suspension was not unexpected and that it would not compromise his ability to represent Rowley as he was prepared for that possibility. The court then gave Rowley twenty-four hours to confer with his family. The following day Rowley again talked to Drew and his family. The next morning, Rowley indicated to the court that he had "a great deal of concern" that Drew's ability to represent him adequately might be impaired. In light of Rowley's concern, Drew, finding no other alternative, requested a mistrial. The court denied the motion for a mistrial, find-

3

ing that Drew could continue to serve as counsel under the circumstances, given that his representation thus far had been effective, Drew's assurances that he would continue to be, and Rowley's own acknowledgment the day before of Drew's adequate representation. The jury ultimately convicted Rowley of Robinson's murder.

Rowley first contends that the court's denial of the motion for replacement of counsel and mistrial violated his Sixth Amendment right to the "the assistance of an attorney unhindered by a conflict of interests." The Sixth Amendment provides a defendant a fair opportunity to secure counsel of his own choice. See Sampley v. Attorney Gen. of N.C., 786 F.2d 610, 612 (4th Cir. 1986). This is not an unlimited right, however, and must not obstruct orderly judicial procedure. See United States v. Gallop, 838 F.2d 105, 107-08 (4th Cir. 1988). An indigent defendant has no right to have a particular lawyer represent him and can demand a different appointed lawyer only with good cause. See id. at 108. We review a claim that the district court erred in denying a motion to replace counsel and a motion for mistrial for abuse of discretion. See United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994); United States v. Hanley, 974 F.2d 14, 16-17 (4th Cir. 1992). In evaluating whether the trial court abused its discretion, we consider the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the attorney/client conflict was so great that it resulted in a total lack of communication preventing an adequate defense. See Hanley, 974 F.2d at 17.

Upon consideration of the relevant factors, we hold that the district court did not abuse its discretion in refusing to grant Rowley's motions for replacement of counsel and a mistrial. We first note that Drew was not under investigation by the same authorities that were prosecuting Rowley. See Roach v. Martin, 757 F.2d 1463, 1479 (4th Cir. 1985) (no actual conflict of interest when attorney was under investigation by State Bar authorities). Drew's suspension was investigated by the Maryland State Bar and Rowley was prosecuted by federal authorities. Drew's suspension was related to a previous bankruptcy case. Second, the trial court conducted an adequate inquiry into the situation by discerning Rowley's satisfaction with Drew's representation up to that point and Drew's own views as to whether he could effectively represent Rowley. Furthermore, there is

4

no evidence in the record of any other disagreement between Rowley and Drew regarding Drew's representation. Under these circumstances, we find no abuse of discretion in the court's denial of Rowley's motions for replacement of counsel and mistrial.

Rowley also contends that the court's admission of substantial propensity evidence and other highly irrelevant and prejudicial evidence violated his due process rights to a fair trial. As a threshold matter, the trial court's evidentiary rulings concerning the admission of evidence pursuant to Fed. R. Evid. 609(a) and Fed. R. Evid. 404(b) or evidence of prior bad acts under Fed. R. Evid. 403 are given great deference and will only be disturbed if there was an abuse of discretion. See United States v. Powers, 59 F.3d 1460, 1464-65 (4th Cir. 1995), cert. denied, 64 U.S.L.W. 3485 (U.S. Jan. 16, 1996) (No. 95-6391); United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994); United States v. Russell, 971 F.2d 1098, 1104 (4th Cir. 1992). Evidence of prior bad acts is admissible if it is relevant to an issue other than character, is necessary to show an essential part of the crime or its context, and is reliable. Substantial prejudice must be shown to warrant exclusion. Powers, 59 F.3d at 1464 (citations omitted). Under Fed. R. Evid. 404(b), evidence of other crimes, wrongs, or acts, is admissible for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Such evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).

The admission of evidence is reviewed for plain error where counsel fails to adequately preserve an objection on the record. See United States v. Brewer, 1 F.3d 1430, 1434 (4th Cir. 1993). In reviewing for plain error, this court should identify the plain error, consider whether it affected substantial rights and consider whether the fairness, integrity, or public reputation of judicial proceedings was jeopardized. See United States v. Olano, 507 U.S. 725, 731 (1993).

Rowley first contends that the court improperly admitted testimony of prior bad acts, specifically, alleged threats he made concerning a rival drug dealer referred to as "Man," threats made to an undercover agent, and to a co-conspirator about killing his mother. He maintains that the probative value of this evidence was clearly outweighed by its prejudicial impact. Kevin Wands, a co-conspirator who testified

5

extensively as to Rowley's drug dealings, testified that Rowley told him to kill Man on the spot whenever he saw him. [1] Wands further testified, without objection, that Rowley threatened to kill unknown individuals who stole his truck. Undercover Agent Darren Sanders also testified that Rowley remarked upon how he resembled an individual who stuck up one of his runners for some drugs and he would kill them if he ever found them,[2] and that Rowley displayed his semi-automatic weapon to intimidate him. Wand's testimony that another co-conspirator, Brandon Holloway, stated that on one occasion he did not take all of the crack because he was afraid Rowley would kill his mother was also admitted.[3]

We have held that where testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible. See United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996). In Chin, we held that Rule 404(b) does not apply to testimony of bad acts that are an integral part of the defendant's criminal enterprise. Similar to that case, the testimony in question here relating to threats made by Rowley demonstrated that the threat of killing was necessary and inextricably intertwined to the drug business, and thereby intrinsic to the crime charged. See id.

Rowley also challenges the admission into evidence of the details underlying four of his prior convictions, two for distributing crack cocaine and two for assault. We first note that evidence of Rowley's prior convictions, admitted under cross-examination of Rowley, was introduced without objection. Furthermore, the circumstances surrounding those convictions were brought out by Rowley himself in an effort to show that the two drug-related convictions arose out of the same investigation and that the assault convictions arose out of the same incident. We further find that admission into evidence of Row-

_____

[1] Because the joint appendix omits this page of the transcripts, it is unclear the nature of the objection, if any.
[2] Although defense counsel objected to the admission of this testimony, the basis of the objection is not clear. Furthermore, evidence of these statements had already been previously entered.
[3] While both parties admit in their briefs that the court sustained defense counsel's objection and struck this testimony, that portion of the transcript is omitted from the joint appendix.

6

ley's drug convictions as it related to co-conspirator Holloway's and Rowley's drug dealings with a common undercover agent, was relevant because Rowley opened the door to such questioning when he denied any such involvement with Holloway on direct examination. Under these circumstances, we find that the trial court did not err in admitting testimony concerning Rowley's prior convictions. Moreover, even assuming plain error, we do not find that it affected Rowley's substantial rights. See United States v. Rhodes, 32 F.3d 867, 871 (4th Cir. 1994).

Rowley also contends that the court's admission into evidence of alleged threats he made while in jail regarding Kevin Wands if he cooperated with the Government, and to a jail cellmate Rowley suspected to be a snitch, was prohibited by Fed. R. Evid. 404(b). The court allowed Timothy McCray to testify that while incarcerated Rowley threatened Wands if he chose to cooperate. The court, however, did not permit McCray to mention "death." The prosecution also cross-examined Rowley on the alleged threats.[4] Evidence of witness intimidation is admissible to prove consciousness of guilt and criminal intent under Rule 404(b), if the evidence (1) is related to the offense charged and (2) is reliable. See United States v. Hayden, 85 F.3d 153, 159 (4th Cir. 1996). Because Wands testified extensively on the nature of the drug conspiracy for which Rowley was also charged and there is no allegation of unreliability, we find no error in the admission of this testimony. Similarly, the prosecution's cross-examination of Rowley concerning threats he made against a jail cellmate he considered to be a snitch did not constitute error because that testimony too related to Rowley's consciousness of guilt.

Rowley next alleges that the court improperly allowed testimony of alleged threats Rowley made to Robinson's family. On direct examination, Rowley testified that he had had only one argument with Andre Robinson, months before the murder, and expressly denied ever threatening him or his family. As rebuttal evidence, the prosecu-

_____

[4] Rowley also claims that it was error for the prosecutor to mention "death" concerning Rowley's threats against Wands during cross-examination of Rowley. Because there was no objection and the court's instruction to not mention "death" did not explicitly extend beyond McCray's testimony, we find no error.

7

tion introduced the testimony of Robinson's mother, Shirley Robinson-Braithwaite, who testified that four or five months prior to the murder, Andre played back a message off of his beeper of Rowley threatening to kill Andre's mother and brother. She testified that some time thereafter, Rowley apologized to her. On surrebuttal, Rowley gave a different version of the message left on Robinson's beeper.

The admission of rebuttal evidence is well within the sound discretion of the trial court and is not reviewable on appeal absent an abuse of that discretion. See Hospital Bldg. Co. v. Trustees of Rex Hosp., 791 F.2d 288, 294 (4th Cir. 1986); Williams v. United States, 151 F.2d 736 (4th Cir. 1945). Given Rowley's opportunity for surrebuttal, and the probative value of the testimony, we find no abuse of discretion in the court's admission of this testimony.

Lastly, Rowley claims that the court erred in admitting testimony, over his objections, of testimony regarding Rowley's propensity for violence towards his girlfriend, also a co-conspirator, and threats he made against her. Relating an incident, Kevin Wands first testified that another individual, "Nate," told him that Rowley "was punching his girlfriend in the face." The basis for the defense's objection was on hearsay grounds rather than on the grounds that it was propensity evidence. We therefore review Rowley's claim for plain error. Because Wands's testimony established that there was a conspiracy to distribute drugs among Wands, Rowley, and Nate, and that the statements were made in the context of that conspiracy, an offense with which Rowley was charged, we do not find plain error in the admission of the testimony.

Rowley next argues that his girlfriend's testimony that she was afraid of Rowley,[5] that he threatened her life "nine days before [Robinson] was murdered," and that she ultimately had to be treated at a hospital where during a phone call she heard someone in the background saying "they would kill somebody or threaten somebody," was inadmissible. Rowley further alleges that Jackson's testimony and her mother's testimony that Rowley made a death threat against Jackson was improperly admitted over his objections. Jackson served as the

_____

[5] A review of the transcripts does not reveal that an objection was raised to this aspect of her testimony.

8

defense's key witness and provided Rowley with an alibi. She was also admittedly a co-conspirator in drug distribution with Rowley. When she testified that she was not afraid of Rowley, the prosecutor asked if Rowley had threatened her in the past, to which she replied she did not recall. No objection was made.

Impeachment is an acceptable purpose for the use of evidence of prior bad acts. United States v. Stockton, 788 F.2d 210, 219 n.15 (4th Cir. 1986). Here, Jackson, a key witness for the defense denied that Rowley threatened her in the past. It was after her denials that the prosecution refreshed her recollection with police reports to the contrary.[6] A witness's credibility may be impeached by examination with respect to prior statements inconsistent with trial testimony. See Fed. R. Evid. 613. Because Jackson's state of mind and her relationship with Rowley bore directly on her credibility, we find that testimony pertaining to threats Rowley made against her was admissible and reliable.

In light of the foregoing, we affirm Rowley's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and oral argument would not aid the decisional process.

AFFIRMED

_____

[6] There was an objection noted on the record when the prosecutor attempted to impeach Jackson with a prior inconsistent statement.