**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 98-4322

ANTHONY LEMUEL JONES, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-97-343)

Submitted: February 23, 1999

Decided: March 23, 1999

Before WIDENER and ERVIN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert L. Flax, Richmond, Virginia, for Appellant. Helen F. Fahey,
United States Attorney, John S. Davis, Assistant United States Attor-
ney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Anthony Lemuel Jones, Jr. appeals his jury convictions for conspiracy to possess with intent to distribute and possession with intent to distribute cocaine base, in violation of 21 U.S.C.§§ 841(a), 846 (1994), and his resulting seventy-one month sentence. We affirm.

Jones was indicted for drug offenses along with co-defendants Don Knox and Larell Thomas. Testimony at trial disclosed that Thomas and Knox sold crack cocaine in the Richmond area along with Michael Loiseau. Loiseau drove to Jones's house in Richmond to pick up Thomas there several times in 1997 and also at times picked up both Thomas and Knox there. Loiseau recalled being inside Jones's house and seeing him sell drugs and seeing him at the kitchen table with a razor in his hand.

In October 1997, Loiseau, Thomas, and Knox agreed to combine their money to purchase two kilograms of cocaine; Loiseau was to purchase one kilogram for himself and one for Thomas and Knox. Loiseau picked up Thomas and Knox on October 22, 1997, and they gave him funds to use for the drug purchase. Loiseau was arrested that night and immediately agreed to cooperate with law enforcement officials. Loiseau spoke with Thomas and Knox in a series of recorded conversations over the next few days. On October 25, Loiseau (acting under the control of DEA agents) brought fake cocaine to Thomas and Knox, and the two were arrested.

On the same day, DEA agents executed a search warrant at Jones's Richmond house. Jones was present during the search, during which officers recovered a brown leather pouch containing 1.7 grams of crack cocaine on a nightstand in the master bedroom. The drugs were packaged in seventeen small baggies, each containing approximately .1 gram of "rock" crack cocaine. A Richmond detective testified that possession of that amount so packaged was consistent with conduct of a "street level" dealer. Officers also recovered a crack pipe, a notebook apparently used as a drug ledger, a small metal scale, a driver's license in Jones's name, a plastic bag containing numerous small glassine baggies, and a razor blade from the bedroom. In the kitchen

2

of the home, officers found a brown lunch bag containing baggies and a single-edged razor blade and two boxes of baking soda (often used in "cooking" crack cocaine). In a front bedroom, officers found luggage containing documents addressed to Thomas. Upon arresting Jones, officers recovered two pagers and approximately $300 cash from his person.

Three officers were involved in interviewing Jones after his arrest. Jones waived his <u>Miranda</u> rights after being advised of them and signing a DEA form. Jones acknowledged that Knox and another person had stayed at his house in the front bedroom and that they had "cooked" crack cocaine in his home several times. Jones also admitted that he used crack cocaine, that Knox and his companion gave him small amounts of crack in exchange for use of the house, that he had purchased drugs from Knox's companion, and that Knox and the other person helped him pay bills for the house. Jones also stated that he received some crack for personal use and small amounts for distribution. In addition, he stated that people frequently came to the house for Knox and the other person and that he had seen the two with weapons.

At trial, Jones testified he had no idea who owned the leather pouch, small baggies, or the pipe found on the nightstand. He also testified that he invoked his right to remain silent in his interview with the police officers and specifically denied making any of the statements to the officers. Jones also stated he did not use drugs at any time during the year preceding his arrest.

At sidebar during Jones's testimony, trial court raised the issue of the voluntariness of Jones's statements to the officers. The prosecution asserted Jones waived any suppression issue but the jury was to assess the voluntariness of the statements. Defense counsel responded "that the statement didn't occur, that what [the DEA agent] is relating he didn't say." The court responded, "Well, he also said they didn't read him his rights, and he asked for a lawyer, and then they questioned him." Defense counsel then stated, "Frankly, that is the first time I heard that." The court then found the statements voluntary.

On cross-examination, Jones admitted he had known Thomas since 1995. He also testified that he permitted Thomas and Knox to wash

3

their clothes at his house as a favor; that he did not know what Thomas did to earn a living; and that he had both Thomas's and Knox's pager numbers. Jones explained that he used the scales, the notebook, and the razor blade for personal purposes unrelated to drug distribution.

As for the pre-trial statements, Jones denied waiving his Miranda rights and stated he signed the waiver form only to acknowledge that the agents read him his rights. He admitted telling the agents that he knew Thomas and Knox and that he recognized Loiseau, but stated he made none of the other statements attributed to him.

Jones asserts that the Government failed to notify defense counsel of the inculpatory statements he allegedly made to the three officers after his arrest in violation of Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Bagley, 473 U.S. 667 (1985).* He continues that the result of the trial would have been different had defense counsel known of the statements. The trial record discloses that defense counsel possessed a typed report concerning the post-arrest interview with Jones and at least one DEA agent's handwritten notes concerning the interview. Therefore, we find no error in regard to disclosure of information related to Jones's post-arrest, pre-trial interview with law enforcement officers.

Jones also asserts he received ineffective assistance of counsel at trial because of the alleged discovery violation discussed above. Generally, allegations of ineffective assistance of trial counsel are more suitable for collateral review rather than direct appeal. See United States v. Tatum, 943 F.2d 370, 379 (4th Cir. 1991). We may entertain such a claim only when the ineffectiveness of counsel is apparent from the trial record and evidentiary hearings are not required. See id. at 380 (citing United States v. Grandison, 783 F.2d 1152, 1156-67 (4th Cir. 1986)). For an ineffective assistance of counsel claim to be considered on direct appeal, it must conclusively appear in the trial record itself that the defendant was not provided with effective representation. See United States v. Hanley, 974 F.2d 14, 16 n.2 (4th Cir. 1992) (citing United States v. Mandello, 426 F.2d 1021 (4th Cir.

_____

*Jones's defense counsel withdrew on appeal, and a new attorney was appointed to represent him in this Court.

4

1970)). Because we find no such attorney error in this record, we conclude that any allegations of ineffective assistance would be more properly addressed in a habeas corpus motion filed under 28 U.S.C.A. § 2255 (West 1994 & Supp. 1998).

For these reasons, we affirm Jones's convictions and sentence. We dispense with oral argument because the facts and legal contentions of the parties are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5