UNITED STATES of America,
Plaintiff-Appellee,

v.

Rufus WILLIAMS, Defendant-Appellant.

No. 78–2515.

United States Court of Appeals,
Ninth Circuit.

April 9, 1979.

David P. Curnow (also argued), San Diego, Cal., for defendant-appellant.

Stephen W. Peterson, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Stephen W. Peterson, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before HUFSTEDLER and TRASK, Circuit Judges, and McNICHOLS,* District Judge.

PER CURIAM:

This is an appeal from a judgment of conviction, after jury trial, of a single count of bank robbery in violation of 18 U.S.C. § 2113(a).

We reverse.

A branch of the Bank of America in San Diego, California, was robbed on February 16, 1978, by a lone black man. A grand jury from the Southern District of California charged the appellant, Rufus Williams, with the offense.

---

* Honorable Ray McNichols, Chief Judge, United States District Court for the District of Idaho.

Investigation of the crime led the F.B.I. agent in charge of the case to conclude that the robber wore a wig during the robbery. On March 4, 1978, a United States Magistrate ordered appellant to participate in a line-up. The order required the accused to speak certain phrases and don a wig during the procedure. Because appellant indicated his intent to refuse to comply with the order of the magistrate, a hearing was held before the district judge assigned to the trial of the case. The Court affirmed the order requiring defendant to submit to the line-up, speak the phrases indicated, and to wear the wig. The line-up was thereafter conducted. Each participant in the line-up, in sequence, donned the wig and spoke the required words.

The bank teller, approached by the robber at the time of the robbery, gave a positive identification when called as a witness at the trial. She testified that she recognized the appellant at the line-up as being the person who robbed her, even before he put on the wig. From the evidence, it is clear that she had an excellent opportunity to observe the robber after he entered the bank and demanded the money. They were face-to-face. She heard his voice during a conversation between them in which he threatened an injury to her family if she did not immediately comply with his demands.

■ Appellant concedes, as he must, that he could properly be required to participate in a line-up. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). However, he argues that the requirement that he put on a wig at the line-up was somehow so suggestive as to constitute reversible error.[1] He argues that the procedure transgressed the limits set by *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) (in-court identification cannot be "so

impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification") and *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972) (out-of-court identification cannot be admitted if there is "a very substantial likelihood of . . . misidentification").

■ It is not necessary, under the facts presented in this record, to reach the issue of suggestive identification by way of the use of the wig, in that the witness identified the appellant prior to his donning the wig. As indicated above, she had an excellent opportunity to observe and hear the voice of the robber, and her identification was without equivocation. Assuming, arguendo, that the use of the wig at the line-up might be considered suggestive, we are nonetheless left with a firm conviction that, based on the "totality of the circumstances", the out-of-court identification was sufficiently reliable to go to the jury for ultimate determination of weight and reliability. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

We conclude that no error is demonstrated in the record so far as the line-up identification procedure is concerned.

■ A much more troublesome issue is raised by the second claim of error presented in this appeal. Appellant contends that the denial of his Motion for Substitution of Appointed Counsel deprived him of the effective assistance of counsel at trial. Approximately a month prior to the trial, Williams, with appointed counsel, Mr. McCutcheon, appeared in open court and moved the Court for the appointment of a different attorney, stating as grounds for the motion that he and the counsel were totally incompatible so far as preparation for trial was concerned. It is clear from the transcript that client and attorney were at serious odds and had been for some time.[2]

---

1. In his Brief, appellant claims that he was required to put the wig on in the presence of the jury during the trial. The record belies this contention. It is true that the Government attorneys sought to have the Court direct the defendant to exhibit himself to the jury wearing the wig, but it was never done.

2. A prior similar motion had been denied by the Magistrate who initially appointed McCutcheon.

Appellant made a prima facie showing of an irreconcilable conflict between himself and his appointed attorney. These contentions were not disputed, yet the Court summarily denied the motion.

A month later, and a week before the ultimate commencement of the trial, appellant and the same counsel again appeared in open court where Williams renewed his motion. On this occasion he presented a more formal oral recitation of the state of disagreement, bad relationship, and lack of communication he claimed existed between himself and his lawyer in regard to the preparation of a defense of the bank robbery charge.

These claims were not only not refuted by counsel, but the response of counsel tended to confirm that the course of the client-attorney relationship had been a stormy one with quarrels, bad language, threats, and counter-threats.

The renewal of the motion was denied. The trial judge advised appellant that he had a choice between being represented by attorney McCutcheon or representing himself. With admirable patience, the Court pointed out to Williams the pitfalls and perils of a pro se defense in a criminal trial before a jury. The appellant was strenuously urged to accept the services of the appointed counsel.

On each of the two occasions when the Court denied the Motion for Substitution of Appointed Counsel, he indicated his view that it was improper, apparently from a policy standpoint, to allow an indigent defendant with counsel appointed at the expense of the Government to "fire" his attorney and have another lawyer appointed to act for him.

Appellant, faced with a choice of going to trial with Mr. McCutcheon as his counsel, or representing himself, chose the latter alternative. As might be anticipated, the defense was a disaster.

We are unable to distinguish the facts of this case from those decided in *Brown v. Craven,* 424 F.2d 1166 (9th Cir. 1970). In *Brown* a state defendant, on a showing of indigency, was assigned counsel from the Public Defender's Office. Long before the trial, dispute arose between client and counsel. On several occasions, well before trial, the accused made motions seeking to have some other attorney represent him. The state courts summarily denied the motions, without making any factual inquiry into the merits of the alleged dissatisfaction with counsel. In a habeas corpus appeal, this Court held that the denial of the motions, under the facts of the case, constituted a deprivation of the right to effective assistance of counsel. Judge Ely, speaking for a majority of the panel, wrote, at page 1170:

> "We think, however, that to compel one charged with [a] grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever."

The instant case differs from *Brown* only in that in *Brown* the defendant was represented during the trial by the attorney he sought to be rid of, while here Williams chose to go the pro se route because he could not obtain a different counsel. The end result is the same. Under either circumstance the defendant is deprived of the constitutionally guaranteed right to have the effective assistance of counsel at trial.

It may be fruitful to discuss what we think *Brown* does not hold and what we do not hold.

It is not necessary that every instance of alleged disagreement between appointed counsel and an accused requires a substitution of counsel. A case in point is the recent decision of this Court in *United States v. Jones,* 512 F.2d 347 (9th Cir. 1975), where the holding of *Brown, supra,* was considered controlling. In *Jones* the trial court, upon a factual inquiry, determined that no irreconcilable conflict was demonstrated and refused to grant a substitution of counsel. This Court affirmed.

Likewise, where the request for change of counsel comes during the trial, or on the eve of trial, the Court may, in the exercise of its sound discretion, refuse to

delay the trial to obtain new counsel and therefore may reject the request. *United States v. Price*, 474 F.2d 1223 (9th Cir. 1973); *Good v. United States*, 378 F.2d 934 (9th Cir. 1967).

Here there was no finding, although a strong showing was made, on the issue of irreconcilable conflict, and the matter was called to the attention of the trial court well before the date of trial. Under the stated facts we find to exist here, the denial of appellant's motion for change of appointed counsel was error. As a result, appellant was deprived of his constitutionally guaranteed right to have the effective assistance of counsel at his trial.

The Judgment appealed from is REVERSED.