UNITED STATES of America,
Plaintiff–Appellee,

v.

Zarina Lenetta MULLEN, a/k/a
Z, Defendant–Appellant.

No. 93–5565.

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1994.

Decided Aug. 22, 1994.

---

**ARGUED:** John Stuart Bruce, Deputy Federal Public Defender, Greensboro, NC,

for appellant. David Bernard Smith, Asst. U.S. Atty., Sr. Litigation Counsel, Greensboro, NC, for appellee. **ON BRIEF:** William E. Martin, Federal Public Defender, Greensboro, NC, for appellant. Walter C. Holton, Jr., U.S. Atty., Greensboro, NC, for appellee.

Before WIDENER, WILLIAMS and MICHAEL, Circuit Judges.

## OPINION

MICHAEL, Circuit Judge:

Defendant-appellant, Zarina Lenetta Mullen, made a timely motion to have her lawyer, who was retained by her family, replaced by a court-appointed one. For the reasons that follow, we conclude that the district court abused its discretion in denying Mullen's motion. Accordingly, we vacate her conviction and remand for the appointment of a new lawyer and a new trial.

### I

On October 26, 1992, Mullen, who was twenty-four years old, was indicted on one count of conspiracy to distribute and to possess with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 846. Around October 15, 1992, Mullen's family retained Romallus O. Murphy to represent her. Mullen apparently had no involvement in the selection of Murphy.

On October 27, 1992, Mullen was ordered detained pending trial in the United States District Court for the Middle District of North Carolina. Murphy appeared at Mullen's preliminary examination and had another lawyer appear for him at the arraignment on November 2, 1992.

On November 18, 1992, Murphy filed a motion to withdraw as Mullen's lawyer. In that motion Murphy informed the court "[t]hat because of the breakdown in communication and the lack of confidence expressed by defendant, counsel can no longer effectively represent the defendant." JA 19(¶ 5).

At about the same time, Mullen herself prepared a motion to dismiss Murphy, which included a request for an appointed lawyer; her motion was dated November 19, 1992, and filed November 24, 1992. In her motion Mullen said that she and Murphy did not "see eye to eye" on any of the issues in her case, that Murphy would not allow her to see the government's discovery materials, that Murphy had "used a tone of voice emulating force and threats," and that Murphy failed to answer her questions, treating her "as though [she were] a child." JA 22.[1] Mullen completed a financial affidavit form showing that she qualified for an appointed lawyer.

Mullen's case was placed on the December 1992 trial calendar. Pursuant to local practice in the district court, motions in December cases were to be heard during the week of December 7, 1992. Thus, the motions filed by Mullen and Murphy should have been heard that week. Unfortunately, because the Assistant United States Attorney (the AUSA) handling Mullen's case forgot to file a response to these motions, they were not called for hearing during the week of December 7. As a result the district court did not address the motions prior to the trial date.

Mullen's trial was set for Monday, December 21, 1992, with jury selection to begin at 9:30 a.m. That morning, immediately prior to jury selection, the court considered for the first time the motions filed by Murphy and Mullen. In response to the court's questions, Murphy said several times that communication between him and Mullen had broken down. Murphy explained that he had had no contact with Mullen since the filing of his motion to withdraw over one month earlier. His only attempted contact with Mullen came the day before trial, but Mullen had refused to see him. Nevertheless, Murphy told the court that he was prepared for trial, and the court found that Murphy was competent "and prepared to proceed ahead." JA 60.

The court also questioned Mullen. She told the court that her family had employed Murphy to represent her. When asked why

---

1. As for Murphy's alleged threatening demeanor, Mullen said in her motion, "I do not feel that this is the manner in which I should have to subject myself to [sic] in order to have and maintain an attorney." JA 22. As for Murphy's alleged failure to answer her questions, Mullen said, "My life is at state [sic] in these proceedings and any question I ask my legal counsel no matter how trivial he may think it to be, I deserve an answer." *Id.*

she was dissatisfied with Murphy, she said that Murphy had refused to let her see the government's discovery materials and claimed that Murphy had lied to her about the permissible scope of a search incident to an arrest. She also complained that Murphy insisted that she plead guilty, an allegation that was included in her motion to dismiss him.

Mullen emphasized to the court that she and Murphy had not spoken for over one month and that as a result she needed more time to prepare for trial. The following colloquy ensued:

[COURT:] Ms. Mullen, the Court is not at this time going to continue this case. We're going to try it. Now, whether Mr. Murphy remains in the case or not is a matter that is between you and Mr. Murphy.

[MULLEN:] Well, he told me he didn't want to help me ...; that he prays that you dismiss him.

[COURT:] I guess he would not have filed his motion, asking to be dismissed, if he didn't want to be dismissed from the case. But sometimes lawyers don't get what they ask for in their case.... He may wish to be dismissed, and he probably wishes he could be out of this case, but whether he represents you or not is up to you. But if he doesn't represent you, we're going to go to trial at 9:30 this morning in this case.

[MULLEN:] I'm not prepared for trial, Your Honor. I have been trying to obtain some documents from my job, and from the hospital. And they need a letterhead from the jail. I write [sic] grievances downstairs to get the letterhead; they have been giving me a hard time.

\* \* \* \* \* \*

[COURT:] But what I'm saying to you is, we're going to start this case at 9:30 this morning. Now, you have a right to proceed with Mr. Murphy, or without Mr. Murphy, whichever you choose to do. But the time to make a decision on that is now, and I want you to make that decision now....

JA 48–50. The court then asked the AUSA whether there was a backup case that could be tried instead, and he replied there was not.

At the court's urging, Mullen conferred briefly with Murphy, after which she told the court that she still did not want Murphy as her lawyer. Mullen added, "I don't want to represent myself." JA 54. The court reiterated that she had only two choices: keep Murphy or proceed *pro se*. Now resigned to her fate, she reluctantly replied that she would proceed by herself. After further colloquy the court said that Murphy was relieved as Mullen's retained lawyer and that Mullen must proceed *pro se*. Noting that Mullen qualified for an appointed lawyer, the court appointed Murphy as standby counsel to sit in the first row of the courtroom during the trial "to be available for any consultation that [Mullen] wishes to engage in, at break time, and that sort of thing." JA 61. Murphy was not to offer advice unless Mullen asked for it.

After a brief recess the court questioned Mullen about her knowledge of trial practice. She answered "no" when asked whether she understood the following: that she had a right to make an opening statement, that she could waive the opening statement, that there were "certain ways [to] go about examining witnesses," that there were rules governing the scope of cross-examination, and that "upon a proper showing" the court would order the attendance of witnesses if she could not afford to pay the witness fees. JA 65–66. (Mullen had previously indicated to the court that she did not know how to select a jury and that she did not know how to present evidence.) The court then asked Mullen how she was going to proceed without Murphy if she did not understand these things. Mullen replied, "You all just do the case. I will just sit here and that's it." JA 66. The court reiterated that it would not continue the case for Mullen to select another lawyer or for another lawyer to be appointed and that Mullen had only two choices: proceed *pro se* or proceed with Murphy. Mullen again emphasized, "I'm not prepared for trial." JA 67. The court replied, "I understand you are not prepared for trial.

But your attorney, Mr. Murphy, has indicated that he is prepared to represent you." *Id.*

At this point the AUSA, wary about a future 28 U.S.C. § 2255 challenge, suggested that the court grant a continuance and appoint a lawyer for Mullen. The AUSA went on to say, "My concern is, as [a] result of some of the answers she has given this morning, I do have some concerns about her proceeding to trial." JA 69. The court responded, "I understand. I don't want this lady to proceed to trial by herself, but that's a decision that she has to make." *Id.* After rechecking and confirming that there was not a backup case, the court again urged Mullen to seek Murphy's advice. Mullen stood her ground and declined.

Mullen's trial went ahead as scheduled despite her express unwillingness to proceed *pro se.* Mullen took no part in the jury selection and made no opening statement. She did not cross-examine any of the government's eight witnesses. She presented no evidence and made no closing argument. She did not consult with Murphy despite the court's constant urging that she do so. The jury was quick in finding her guilty. She was sentenced to 220 months imprisonment and to five years supervised release, and she was fined $2,000. Mullen appeals the conviction, the sentence and the fine.

## II

■ Mullen asserts that the district court erred when it refused to allow her to replace Murphy with a court-appointed lawyer. The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant's right to have a lawyer of his or her own choosing is an essential element of the Sixth Amendment right to assistance of counsel. *United States v. Gallop,* 838 F.2d 105, 107 (4th Cir.), *cert. denied,* 487 U.S. 1211, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). "[T]he right to counsel of choice, like the right to self-representation, is premised on respect for the individual...." *Wilson v. Mintzes,* 761 F.2d

275, 286 (6th Cir.1985). *Cf. Flanagan v. United States,* 465 U.S. 259, 267–68, 104 S.Ct. 1051, 1055–56, 79 L.Ed.2d 288 (1984) (the right to counsel of choice "reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding"). Nevertheless, the defendant's right to choose his or her lawyer is not absolute. *Sampley v. Attorney General of North Carolina,* 786 F.2d 610, 612 (4th Cir.), *cert. denied,* 478 U.S. 1008, 106 S.Ct. 3305, 92 L.Ed.2d 719 (1986). "Such right must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice." *Gallop,* 838 F.2d at 108.

■ Because the right to choose counsel is not absolute, it necessarily follows that a defendant does not have an absolute right to substitution of counsel. *Cf. id.* As a general rule, a defendant must show good cause in requesting a new appointed lawyer. *See id.* And the trial court has the discretion to determine whether a defendant's motion for substitution of counsel should be granted. *Id.* In evaluating whether the trial court abused its discretion in denying a defendant's motion for substitution, we consider three factors: "Timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." *Id.* We evaluate these factors below, and we conclude that the district court abused its discretion in not appointing a new lawyer for Mullen.

### A. *Timeliness*

■ In considering timeliness when a defendant requests substitution of counsel, "the court is entitled to take into account the ... public interest in proceeding on schedule." *United States v. West,* 877 F.2d 281, 286 (4th Cir.), *cert. denied,* 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989). In our review of a district court's denial of such a request, we must therefore be mindful of the court's interest in moving its docket.

The government concedes here that Mullen made a timely request to replace Murphy with a court-appointed lawyer. There were fifty-six days between the indictment (October 26, 1992) and the date of trial (December 21, 1992). Murphy filed his motion to withdraw on November 18, 1992, thirty-three days prior to trial. Mullen's motion to dismiss was filed less than one week later, twenty-seven days before trial. The motions would have been heard in adequate time before trial if the government had not forgotten to file a response. (Under local practice a government response would have prompted the clerk's office to set a hearing date in the week of December 7, 1992; as the AUSA conceded to the court, "it really just slipped my mind, which was why it was not called...." JA 53.) Any blame for delay thus lies with the government, not with Mullen; she did not engage in a "transparent plot to bring about delay." *Gallop*, 838 F.2d at 108.

The district court was obviously concerned that appointment of a new lawyer for Mullen would have necessitated a continuance with no backup case to fill the slot. With all respect for the district court's commitment to the firm management of its docket, we believe that some delay in the trial could have been tolerated here.

B. *Adequacy of the district court's inquiry*

■ "When a defendant raises a seemingly substantial complaint about counsel, the judge 'has an obligation to inquire thoroughly into the factual basis of defendant's dissatisfaction.'" *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir.1991) (quoting *United States v. Hart*, 557 F.2d 162, 163 (8th Cir.), cert. denied, 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977)). An inquiry into the reasons for a defendant's dissatisfaction with his or her lawyer is necessary for the trial court to determine whether good cause for substitution of counsel exists. *United States v. Welty*, 674 F.2d 185, 188 (3d Cir.1982).

The district court inquired into three reasons why Mullen was dissatisfied with Murphy: (1) her allegation that Murphy would not allow her to see the government's discovery materials, (2) her allegation that Murphy had lied to her about the permissible scope of a search incident to an arrest, and (3) her allegation that Murphy insisted that she plead guilty. As for the discovery materials, the court seemed content that Mullen received the materials the weekend before the trial. As for Murphy's conclusion that the search of Mullen's belongings was lawful, the court expressed its view that this was simply a matter of opinion. As for Murphy's insistence that Mullen plead guilty, the court thought Murphy was merely giving advice that Mullen did not have to follow. The district court concluded that Mullen simply did not like Murphy's legal advice and, consequently, communication broke down. In our opinion the district court made an adequate inquiry into the bases of Mullen's dissatisfaction with Murphy.[2]

C. *Extent of the breakdown in communication*

■ The next factor we consider is whether there was a total lack of communication preventing an adequate defense. Murphy's motion to withdraw stated "[t]hat because of the breakdown in communication and the lack of confidence expressed by defendant, counsel can no longer effectively represent the defendant." JA 19. Between the filing of that motion and the date of trial—a period of more than one month—Murphy and Mullen had no contact whatsoever. The only attempted contact during this time occurred the day before the trial when Murphy sought to discuss with Mullen the government's discovery materials; Mullen refused to see him. On the morning of trial Murphy reiterated to the court several times that communication had broken down. During the trial Mullen refused to consult with Murphy in his standby capacity, notwithstanding the court's consistent urging that she do so and despite the obvious diffi-

---

**2.** In her discussions with the court Mullen did not press the other allegations enumerated in her motion to dismiss Murphy, namely her allegations that Murphy conducted himself in a threatening manner and that he refused to answer her questions, treating her "as though [she were] a child." JA 22.

culties she faced without a lawyer's guidance. It is clear that there was a total lack of communication. *Compare United States v. Hanley*, 974 F.2d 14, 17 (4th Cir.1992) (no total lack of communication because defendant's lawyer assisted defendant during the trial); *Gallop*, 838 F.2d at 109 (same).

We now turn to whether this lack of communication prevented an adequate defense. With the exception of his attendance at Mullen's preliminary examination, Murphy did not indicate that he was able to do any work on Mullen's case before he filed his motion to withdraw. After he filed his motion, Murphy did "some" preliminary work in that he had "a case somewhat like this, doing some work on a conspiracy, so [he] continued to do that." JA 46. After the AUSA informed Murphy that the trial was imminent, Murphy "got information" and "read it and the discovery," much of which, however, was "not applicable to her particular situation." JA 46. Totally missing from this picture is any consultation by Murphy with Mullen about the facts of her case; in particular, Murphy could not have inquired into whether there was exculpatory evidence that only Mullen may have known about. *Cf. Brown v. Craven*, 424 F.2d 1166, 1169 (9th Cir.1970) (Defendant "was forced into a trial with the assistance of a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not, in any manner whatsoever, communicate. Thus, the attorney was understandably deprived of the power to present any adequate defense in [defendant's] behalf."). As Mullen stressed to the court, "[Murphy] didn't build a defense for my own case, things I can obtain to prove

that I wasn't involved in the conspiracy, sir." JA 57. Murphy's own description of his preparation tends to show that the lack of communication hampered his ability to put together an adequate defense. In addition, it is clear to us that had the court not relieved Murphy, he and Mullen would not have communicated effectively during the trial, making an adequate defense unlikely.

### D. *Conclusion*

In sum, we conclude: (1) that Mullen's request to replace Murphy with a court-appointed lawyer was timely made, (2) that the district court adequately inquired into the reasons why Mullen was dissatisfied with Murphy, and (3) that there was a total breakdown in communication between Mullen and Murphy, making an adequate defense unlikely had Murphy handled the trial. On balance, the timeliness factor and the breakdown in communication tip the scales sufficiently for us to conclude that the district court abused its discretion by not appointing a new lawyer for Mullen. In so concluding, we observe that this case is unlike most substitution of counsel cases reported on appeal. Most such cases involve a motion for substitution made shortly before or during trial, multiple substitutions, or both.[3] Such cases recognize the substantial interest of the trial courts in keeping their dockets moving, *i.e.*, "[a]n accused's right to choose his own counsel cannot be manipulated to delay proceedings or hamper the prosecution." *United States v. Panzardi Alvarez*, 816 F.2d 813, 816 (1st Cir.1987); *see Hanley*, 974 F.2d at 17; *Gallop*, 838 F.2d at 108. In the instant case, however, Mullen made her request well before trial. Moreover, Murphy was Mul-

---

**3.** The cases cited by the government are representative of the typical case when substitution of counsel is denied. *E.g., Hanley, supra* (defendant, who had already received three continuances and four appointed lawyers, tried to force his fourth lawyer to quit one week before trial); *Gallop, supra* (five days before trial defendant sought to replace his second appointed lawyer); *United States v. Harris*, 2 F.3d 1452 (7th Cir.) (defendant, who was on his third appointed lawyer and fourth overall, discharged his fourth lawyer on the morning of trial; court held that defendant was not denied his right to counsel by having to proceed *pro se* ), *cert. denied*, —— U.S. ——, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *United States v. Pina*, 844 F.2d 1 (1st Cir.1988) (on sixteenth day of trial, *pro se* defendant sought

an appointed lawyer, but he would not accept one from the federal public defender's office); *United States v. Hillsberg*, 812 F.2d 328 (7th Cir.) (defendant moved for a substitution at the beginning of the trial), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987); *United States v. Moore*, 706 F.2d 538 (5th Cir.) (defendant, who was on his fourth appointed lawyer, moved four days before trial for a new appointed lawyer), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983); *United States v. Davis*, 604 F.2d 474 (7th Cir.1979) (on the morning of trial, defendant, who had gone through one privately retained lawyer and three appointed lawyers, dismissed his lawyer and asked for the appointment of one particular lawyer).

len's first lawyer in this case and thus Mullen was seeking her first substitution of counsel. And, because Murphy had been privately retained by her family, Mullen was seeking an appointed lawyer for the first time. The government has not pointed us to any case where an appellate court upheld a trial court's denial of a defendant's timely request for his or her first substitution and appointment of counsel.[4]

## III

The district court abused its discretion in not appointing a new lawyer for Mullen. Accordingly, we vacate Mullen's conviction and remand the case for the appointment of a new lawyer and a new trial.[5]

*VACATED AND REMANDED.*

**4.** A case more instructive than the cases cited by the government is *United States v. Williams,* 594 F.2d 1258 (9th Cir.1979). In *Williams* the defendant moved approximately one month prior to trial for the appointment of a new lawyer to replace his first one, who was court-appointed. *Id.* at 1259. Defendant alleged that he and counsel "were totally incompatible so far as preparation for trial was concerned." *Id.* The trial court denied the motion. One month later and a week before trial, the defendant renewed his motion and "presented a more formal oral recitation of the state of disagreement, bad relationship, and lack of communication he claimed existed between himself and his lawyer in regard to the preparation of a defense...." *Id.* at 1260. The

court again denied the defendant's motion and "strenuously urged" the defendant to keep his lawyer. *Id.* The defendant, "faced with a choice of going to trial with ... his counsel, or representing himself, chose the latter alternative. As might be anticipated, the defense was a disaster." *Id.* The Ninth Circuit emphasized that the matter was called to the attention of the trial court well before the date of trial and held that the trial court erred in not granting defendant's motion for a substitution of counsel. *Id.* at 1261.

**5.** Because we vacate Mullen's conviction, we do not reach her challenges to her sentence and fine.