68 F.3d 462
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Abdal Maliek SALAAM, a/k/a Gary McLaughlin, Defendant-Appellant.
 No. 94-5684.
 United States Court of Appeals, Fourth Circuit.
 Oct. 16, 1995.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Sr., District Judge. (CR-94-79, CR-94-80)
 ARGUED: W. David Lloyd, Greensboro, North Carolina, for Appellant. John Warren Stone, Jr., Assistant United States Attorney, Greensboro, North Carolina, for Appellee. ON BRIEF: Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 Before ERVIN, Chief Judge, and MURNAGHAN and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant-appellant Abdal Salaam was convicted of various counts emanating from the commission of two bank robberies in Greensboro, North Carolina. Salaam now appeals his convictions. Salaam claims that he was given ineffective assistance by his counsel after his arrest, and that he would not have confessed to the robberies but for the ineffective assistance. Salaam also challenges, as an abuse of discretion, the district court's finding that he voluntarily waived his right to his appointed public defender, and the district court's decision to permit Salaam to proceed pro se. Salaam further attacks as an abuse of discretion the district court's denial of his request either to be represented by another public defender, or to be granted a continuance in order to prepare to proceed pro se. We decline to consider Salaam's ineffective assistance of counsel claim, but otherwise affirm.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 A Greensboro, North Carolina, branch of First Union National Bank, an FDIC-insured institution, was robbed on March 11, 1994. A branch of Branch Banking and Trust, another FDIC-insured bank, was robbed on March 23, 1994, also in Greensboro. After the armed robber left the bank, the police engaged him in a high-speed chase, which culminated in his arrest. The robber was placed in custody and identified as Abdal Maliek Salaam.
 
 
 3
 The morning after his arrest for the March 23rd robbery, Salaam consulted with previously retained counsel, Richard Dailey. Salaam then confessed to the March 23rd robbery and to thirteen other robberies, including the March 11th robbery. Salaam confessed to carrying a revolver during all of the robberies. The government had not offered Salaam a plea bargain or any other concession in return for his confession.
 
 
 4
 Due to financial inability to maintain his retained counsel, Salaam was then assigned a public defender, Gregory Davis, to represent him. Although Salaam at first refused to communicate with Davis, he eventually spoke to Davis about his case and asked Davis to file a motion to suppress his confession. Davis filed the motion, and a suppression hearing was scheduled for the week before trial.
 
 
 5
 Evidence at the suppression hearing established that Salaam had two years of college education and some previous experience with the criminal justice system. Salaam testified at the hearing that his previously retained attorney (Dailey) had advised him that he would receive substantial benefits from the government in exchange for a confession. Dailey had not been called as a witness, and Salaam personally requested that Dailey be called. The court continued the suppression hearing until the first day scheduled for trial in order to give Salaam an opportunity to produce Dailey as a witness.
 
 
 6
 At the continued suppression hearing, the district court permitted Salaam to call Dailey as a witness. After Davis stated that presenting Dailey as a witness was against his professional judgment, Salaam himself questioned Dailey. Dailey testified that after Salaam's arrest, he had not advised Salaam that a confession would result in a substantial assistance motion from the government, but had advised Salaam that a confession might result in a reduction in sentence due to acceptance of responsibility. After hearing Dailey's testimony, the court found Salaam's confession to be admissible, and not the fruit of ineffective assistance by Dailey.
 
 
 7
 Before the court proceeded to jury selection and trial, Salaam requested that Davis be dismissed, on the grounds that Davis had not followed Salaam's request to call Dailey as a witness at the suppression hearing. The district court told Salaam that he had a constitutional right to proceed pro se, but also cautioned that specialists are better equipped to handle these matters. Salaam asked if the public defender to whom Salaam had originally been assigned, Mr. Bruce, could be called to represent him. The court asked if there were specific things other than calling Dailey that Davis was refusing to do for Salaam in preparation for trial. Salaam said no, but asked if Bruce could be called if any questions were to arise at trial which Davis refused to ask. The court told Salaam that he would not be permitted to retain another attorney, whether as lead or backup counsel, at this late hour (i.e., the day scheduled to begin trial). Jury selection commenced, and Davis conducted voir dire without objection from Salaam.
 
 
 8
 Trial began the next day. After Davis waived a defense opening statement and after the government had given its opening statement to the jury, Salaam overturned a table in the courtroom and said: "I want a fair trial. I want another lawyer...." The court ordered the jury to leave.
 
 
 9
 Out of the presence of the jury, Salaam again requested that Davis be dismissed, and that Bruce be appointed to replace Davis. Salaam stated that he wanted a new lawyer because he had not been given access to a law library, grand jury minutes, or witness statements. The court asked Davis if he had informed Salaam about the evidence in the case, and Davis responded that he had discussed expected testimony with Salaam. Davis stated that he was prepared for trial. The court informed Salaam that Davis did not have the right to copy the witness statements and grand jury minutes from the government's files, and did not have the power to give Salaam access to a law library. Salaam continued to insist on firing Davis.
 
 
 10
 The district court refused to appoint new counsel, and gave Salaam the choice of continuing with Davis or representing himself. Salaam chose to represent himself, and asked for a continuance in order to prepare. The district court denied the request for a continuance, and again gave Salaam the choice of continuing with Davis or representing himself. Salaam continued to insist on dismissing Davis, and the district court gave Salaam fifteen minutes to review the government's files.
 
 
 11
 Salaam then proceeded pro se. The district court ordered Davis to sit behind Salaam and act as backup counsel, but Salaam never consulted Davis. The jury convicted Salaam of all charges pertaining to the two robberies, and the district court imposed sentence. Salaam filed a timely notice of appeal, and proceeds before this court with counsel.
 
 II. DISCUSSION
 
 12
 A. Waiver of Right to Counsel.
 
 
 13
 A waiver must be voluntary, knowing, and intelligent to constitute an effective waiver of the Sixth Amendment right to counsel. Von Moltke v. Gillies, 332 U.S. 708, 723-24 (1948).
 
 
 14
 We first review the record to determine whether Salaam's waiver was voluntary. We note that "[a] refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver," United States v. Gallop, 838 F.2d 105, 109 (4th Cir.), cert. denied, 487 U.S. 1211 (1988)--that is, "once the trial court has appropriately determined that a substitution of counsel is not warranted, the court can insist that the defendant choose between continuing representation by his existing counsel and appearing pro se," id. Thus, a waiver may be voluntary even if the defendant maintains that he or she does not want to proceed pro se, but rather would prefer to have another attorney. As we discuss infra, the district court in the instant case did not abuse its discretion in finding that Salaam did not have good cause for his request for a substitution of counsel. Therefore, the court properly found that Salaam's waiver was voluntary.
 
 
 15
 We now turn to whether Salaam's waiver was knowing and intelligent. Although the Fourth Circuit does not require any particular form of interrogation by a district court in order to determine whether a waiver is knowing and intelligent, id. at 110, we have stated that " '[a]t a minimum the district court should, before permitting an accused to waive his right to counsel, explain the charges and possible punishments....' " Id. (quoting Aiken v. United States, 296 F.2d 604, 607 (4th Cir.1961)). The district court should also establish the general capabilities of the defendant, and should explain the dangers and disadvantages of self-representation to the defendant. Id. at 110. The failure to do these things does not, however, render the proceedings per se unconstitutional. Id.; Aiken, 296 F.2d at 607.
 
 
 16
 In the present case, the district court failed to make a complete inquiry into the matter. The court discussed the disadvantages of selfrepresentation by stating: "I would urge no one to attempt to take their own appendix out.... I think specialists in the field are better equipped to handle those matters." The district court had established the capabilities of the defendant, both by discovering at the suppression hearing that Salaam had two years of college education and that he had had experience with the criminal justice system in the past, and by observing Salaam question Dailey at the continued suppression hearing. However, the district court never explained the charges and possible punishments to Salaam before accepting his waiver.
 
 
 17
 Yet, the failure to explain the charges and possible punishments before permitting Salaam to waive his right to counsel did not render the proceedings unconstitutional, because the defendant insisted on proceeding pro se. As we explained in Gallop:
 
 
 18
 [T]he court should not force ... a capricious defendant to cooperate with an attorney if he is ... adamant ... that he cannot proceed with the appointed representation. The proper procedure, though not necessarily the exclusive one, is to order the defendant ... to proceed pro se but also to order the appointed counsel to remain as a backup.
 
 
 19
 838 F.2d at 110. Here, as in Gallop, the defendant adamantly refused to proceed with court-appointed counsel, and the presence of backup counsel insured that adequate assistance of counsel was available; the failure to inform Salaam of the charges and possible punishments is thus not reversible error.
 
 
 20
 In sum, we find that in light of Salaam's unjustified insistence on new counsel and refusal to proceed with his appointed counsel, the district court's decision to permit Salaam to proceed pro se with backup counsel did not violate Salaam's Sixth Amendment rights.
 
 
 21
 B. Denial of Replacement Counsel.
 
 
 22
 As we noted in Gallop, "[t]he determination of whether or not [a] motion for substitution of counsel should be granted is within the discretion of the trial court and the court is entitled to take into account the countervailing ... interest in proceeding on schedule." Id. at 108 (citing Morris v. Slappy, 461 U.S. 1, 13 (1983)). In determining whether the trial court has abused its discretion in denying a defendant's motion for substitution of counsel, an appellate court should consider the following factors: "[t]imeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." Id. at 108; see also United States v. Mullen, 32 F.3d 891, 895 (4th Cir.1994) (analyzing same factors).
 
 
 23
 Turning to the first factor, timeliness, in the instant case Salaam requested that Bruce be substituted for Davis on the day trial was scheduled to begin. Although Salaam knew at least as early as the first day of the suppression hearing, held the week prior to trial, that Davis would not call Dailey as a witness, Salaam did not request that Davis be dismissed as his counsel until trial. Salaam reiterated his request for replacement counsel after causing a disturbance in front of the jury. Salaam then stated that he wanted a new attorney because Davis had not given him a law library, witness statements, and grand jury minutes. Irrespective of whether Davis had the power to give any of those things to Salaam, Salaam knew that Davis had not given them to him earlier, yet waited until the jury was empaneled to request new counsel on these grounds. The delayed timing of the request weighs heavily in favor of finding the request untimely.
 
 
 24
 Timeliness is a factor to consider when reviewing a district court's denial of a motion to substitute counsel because trial courts must be given the right to weigh the countervailing interest in the efficient management of the docket. Mullen, 32 F.3d at 895 ("In considering timeliness when a defendant requests substitution of counsel, 'the court is entitled to take into account the ... public interest in proceeding on schedule.' ") (quoting United States v. West, 877 F.2d 281, 286 (4th Cir.), cert. denied, 493 U.S. 869 (1989)). If, however, substituting counsel will not delay the proceedings, there is no reason for the trial court to deny the motion. Although Salaam now claims that Bruce was familiar with his case and that Bruce's substitution as counsel would not have necessitated a continuance, no evidence to that effect was before the district court. The district court was informed only that Bruce was a member of the public defender's staff and had been in contact with Salaam. The district court could logically have concluded that in light of the fact that Bruce was not appointed as trial counsel, Bruce would not have been prepared, and perhaps not even available, to proceed to trial that day. Therefore, the district court did not abuse its discretion in finding that Salaam's request was untimely.
 
 
 25
 Turning to the second factor, the adequacy of the district court's inquiry into the problems between the defendant and his attorney, we find that the court's inquiry here was adequate. The court had observed Davis' refusal to question Dailey at the suppression hearing, and had allowed Salaam to question Dailey in Davis' stead. The court asked Salaam if there were questions Salaam wanted Davis to ask at trial which Davis would not ask, and Salaam responded that there were none of which he was yet aware. The court asked Salaam what other problems he had with his attorney, and Salaam stated that his attorney had not given him access to grand jury minutes, witness statements, lists of government witnesses, and a law library. The district court explained to Salaam that his attorney did not have the power to give him access to a law library or to copy witness statements or grand jury minutes from the government's files. The court asked Davis if he had discussed the case with Salaam, and was prepared for trial. Davis responded that he had discussed with Salaam the general expected testimony of government witnesses, and that he was prepared for trial. As was the case in Mullen, the district court inquired into all of the bases complained of by the defendant, by asking both the defendant and the attorney about the problems raised; as in Mullen, this was an adequate inquiry. See id. at 896.
 
 
 26
 The last factor to consider is whether there was a total lack of communication between counsel and the defendant preventing an adequate defense. Although Salaam never conferred with Davis at trial, cf. Gallop, 838 F.2d at 109 (no total lack of communication because defendant's lawyer assisted defendant during trial), Davis had consulted Salaam prior to trial. Thus the instant case may be distinguished from Mullen, in which the defendant and her attorney had not spoken to one another even once in the month prior to trial, and the attorney had received no information from the defendant about potential exculpatory evidence. See Mullen, 32 F.3d at 896-97. Davis stated that he was ready to proceed to trial. Thus there was neither a total breakdown in communication between the attorney and the defendant, nor any lesser breakdown which would have prevented an adequate defense by the attorney.
 
 
 27
 In light of the foregoing, the district court did not abuse its discretion in denying Salaam's request to substitute Bruce for Davis as his counsel.
 
 
 28
 C. Denial of Continuance in Order to Prepare to Proceed Pro Se.
 
 
 29
 "The matter of continuance is traditionally within the discretion of the trial judge," Ungar v. Sarafite, 376 U.S. 575, 589 (1964), and "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel," Slappy, 461 U.S. at 11-12 (quoting Ungar, 376 U.S. at 589). In the instant case, the district court's insistence on expeditiousness, giving Salaam only a fifteen minute continuance to review the government's files, was not an abuse of discretion because Salaam's request for a delay was not, under the circumstances, justifiable.
 
 
 30
 As explained supra, Salaam's request for substitution of counsel on the day of trial was not justified under the circumstances. Although all of the grounds upon which Salaam had requested to fire his attorney, Davis, were known to Salaam at least as early as the week before trial, and although the district court had informed Salaam prior to jury selection that he had the right to proceed pro se, Salaam waited until the jury was empaneled and sitting before demanding to proceed pro se. A continuance would not have been necessary if Salaam had kept Davis as counsel, as Davis was prepared to proceed to trial. In the face of Salaam's clear and unequivocal request to the contrary, the district court could not demand that Salaam proceed with Davis as lead counsel. See Fields v. Murray, 49 F.3d 1024, 1029 (4th Cir.1995) (holding that district court is not required to permit defendant to proceed pro se unless the defendant's request is clear and unequivocal). Yet the district court was under no obligation to permit Salaam to retain new counsel, primarily because of the court's countervailing interest in the efficient management of the docket. See Mullen, 32 F.3d at 895. The same interest applies here. See United States v. Harris, 2 F.3d 1452, 1455 (7th Cir.), cert. denied, 114 S.Ct. 481 (1993) (holding denial of continuance proper where defendant requested continuance in order to secure new counsel on first day of trial, and the request for substitution of counsel was unjustified).
 
 
 31
 Therefore, the district court did not abuse its discretion in denying Salaam a continuance in order to prepare to proceed pro se.
 
 
 32
 D. Ineffective Assistance of Counsel.
 
 
 33
 Salaam claims that attorney Dailey rendered him ineffective assistance of counsel in advising him to confess to the bank robberies the morning after his arrest. However, it is unclear from the record whether Dailey did so advise Salaam. At the suppression hearing, Salaam testified, apparently stating that Dailey told him he would receive substantial concessions from the government if he confessed. Also at the suppression hearing, Salaam called Dailey as a witness, and Dailey said that he had not told Salaam that Salaam would receive a substantial assistance motion from the government for confessing, but that he had told Salaam that a confession could result in a reduced sentence for acceptance of responsibility.
 
 
 34
 The rule in the Fourth Circuit is that a claim of ineffective assistance of counsel is more properly raised in a 28 U.S.C. Sec. 2255 (habeas corpus) motion in the district court than on direct appeal, unless the record conclusively shows ineffective assistance. United States v. DeFusco, 949 F.2d 114, 120 (4th Cir.1991), cert. denied, 503 U.S. 997 (1992). In light of the fact that it is unclear from the record whether Dailey advised Salaam to confess, we decline to consider Salaam's ineffective assistance claim on direct appeal.
 
 III. CONCLUSION
 
 35
 For the foregoing reasons, we affirm Salaam's conviction, and dismiss Salaam's ineffective assistance claim.
 
 AFFIRMED IN PART AND DISMISSED IN PART