**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4570

AARON D. PORTIS, a/k/a Puff,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Joseph Robert Goodwin, District Judge.
(CR-96-179)

Submitted: August 18, 1998

Decided: September 8, 1998

Before ERVIN and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Thomas J. Gillooly, Charleston, West Virginia, for Appellant.
Rebecca A. Betts, United States Attorney, John L. File, Assistant
United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Aaron Portis ("Portis") was convicted by a jury of one count of conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846 (1994); two counts of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (1994); and five counts of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (1994). The district court sentenced Portis to 151 months' imprisonment, to be followed by five years of supervised release, and imposed fines and assessments totaling $2800. Portis appeals his convictions and resulting sentence, contending that the court erred in denying his motion for substitute appointed counsel, that the court incorrectly denied his motion for a new trial, and that he was denied effective assistance of counsel. Finding no error, we affirm.

I.

In the spring and summer of 1996, West Virginia State Police conducted an undercover investigation of the illegal drug activity at the Beckley West Apartments in Beckley, West Virginia. As part of that investigation, Jay Sauls ("Sauls"), a crack cocaine addict who maintained an apartment in the complex, permitted the agents to conceal video and audio recording devices in his apartment. For approximately one month, the agents recorded, observed, and in some instances, participated in, controlled substance transactions involving a number of individuals, including Portis. Eventually, a grand jury indicted eight people as a result of this investigation.

On November 8, 1996, following Portis's arraignment, the district court appointed Jane Charnock ("Charnock") to represent Portis. On January 6, 1997, the day before trial, Charnock filed a motion to withdraw as counsel, or, in the alternative, to continue the trial date. In that motion, Charnock stated that her request was "not based on any fundamental disagreement with [Portis], but . . . on [Portis's] failure to meet and assist in the preparation for trial."[1] At a hearing regarding

_____

[1] J.A. at 32.

that motion on January 8, 1997, Charnock indicated that "the issues that were raised in the motion have been resolved to a point,"[2] but still requested a continuance, which the court granted. The court, at the Government's request, granted two additional continuances, which postponed the trial until May 20, 1997.

On May 13, 1997, Charnock filed a motion to withdraw as counsel on the basis of "a fundamental conflict of interest between counsel and Mr. Portis . . . ."[3] The district court held an <u>in camera</u> hearing on May 15, 1997, during which Charnock stated that Portis would not identify possible witnesses or defenses. Portis disputed this statement and complained of Charnock's lack of diligence. Specifically, Portis stated he was being "pushed" into a plea bargain which he did not want.[4]

After questioning Portis, the court recessed and directed Charnock and Portis to meet and attempt to resolve their differences. After conferring with Portis, Charnock stated that she thought "substantial progress" had been made and that she was ready to proceed with trial.[5] Portis then stated that, "[i]f [Charnock] wants to stay on as my lawyer, it's fine with me."[6] However, Portis then stated that he wanted to be "represented differently," by someone who would more thoroughly examine his case. After further questioning, the district court determined that Portis failed to satisfy his burden of showing good cause for a new appointed attorney and denied the motion for new counsel.

At trial, the Government presented ample evidence that Portis possessed and distributed crack cocaine. For example, Sergeant David Hess ("Hess") of the West Virginia State Police testified that, while working undercover, he purchased crack cocaine from Portis on two occasions. In addition, Sauls testified that, while working as a confidential informant, he purchased crack cocaine from Portis on three occasions. These five transactions were videotaped and audio taped.

_____

[2] <u>Id.</u> at 34.
[3] <u>Id.</u> at 81.
[4] <u>See id.</u> at 92-93.
[5] <u>Id.</u> at 100.
[6] <u>Id.</u>

The government also introduced Portis's voluntary post-arrest statements in which he admitted that he was involved in the distribution of crack cocaine. Finally, Arthur Floyd ("Floyd"), a central figure in the drug dealing at the apartment complex, testified that he supplied Portis with crack cocaine and observed Portis selling it.

After the Government completed its case, the district court granted Charnock's request for an in camera hearing. During that hearing, Charnock stated, "Mr. Portis has a request, that he be allowed to present his case tomorrow . . . . Mr. Portis thinks that I'm not ready to put a witness on the stand."[7] The district court reluctantly granted the request. The following day, Portis testified. He denied possessing or selling crack cocaine, stated that the police officers' testimony was inaccurate, and contradicted the police officers' accounts of his post-arrest statements. The jury convicted Portis on all counts, and the district court sentenced him to 151 months of imprisonment, to be followed by five years of supervised release, and imposed $2800 in fines and assessments. This appeal followed.

II.

A.

Portis's first contention on appeal is that the district court erred in denying his motion for substitute counsel. Portis argues that the court failed to inquire adequately into, to appreciate the seriousness of, or to take into account the early and repeated signs of differences between Portis and Charnock. According to Portis, these signs included the May 15, 1997 pre-trial hearing in which Portis stated that he was being "pushed" into accepting a plea agreement and believed Charnock was not adequately prepared for trial and the in camera hearing conducted at the close of the Government's case in which Charnock stated that, "Mr. Portis thinks that I'm not ready to put a witness on the stand."[8] We disagree with Portis's contention.

In United States v. Mullen,[9] we were confronted with the issue Portis has raised. We stated that:

_____

[7] Id. at 293.
[8] Id. at 293.
[9] 32 F.3d 891 (4th Cir. 1994).

4

As a general rule, a defendant must show good cause in requesting a new appointed lawyer. And the trial court has the discretion to determine whether the defendant's motion for substitution of counsel should be granted. In evaluating whether the trial court abused its discretion in denying a motion for substitution, we consider three factors:"Timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense."**10**

An analysis of these factors leads us to the conclusion that the district court did not abuse its discretion in denying Portis's motion for substitute counsel.

First, Portis's motion was untimely. As the district court stated, the "motion [was] made just two working days, basically, before trial,"**11** and "the public interest and proceeding on schedule and moving the docket weighs heavily in favor of denying this motion."**12**

Second, the district court adequately inquired into Portis's grievances against Charnock. It conducted a thorough hearing, during which it questioned Portis at length, recessed to permit Portis and Charnock to discuss the situation, and reconvened to continue the hearing. In addition, the court specifically inquired into Portis's dissatisfactions, asking such questions as, "[w]hat is your problem with your lawyer specifically?;"**13**"[w]hat is it that Miss Charnock--that you've told her you want to do that she won't do or hasn't done?";**14** and asked "[w]hat kind of conflict of interest" Portis was alleging.**15** Thus, the court made an adequate inquiry into the bases of Portis's dissatisfaction with Charnock.

_____

**10 United States v. Mullen**, 32 F.3d 891, 895 (4th Cir. 1994) (quoting United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988) (internal citations omitted)).
**11** J.A. at 102-03.
**12 Id.** at 102.
**13 Id.** at 92.
**14 Id.** at 98.
**15 Id.** at 101.

5

Finally, we do not believe that the conflict was so great that it resulted in a "total lack of communication preventing an adequate defense."[16] After meeting at the court's direction on May 15, 1997, Charnock stated that "substantial progress" had been made. In addition, Portis himself stated that, "[i]f [Charnock] wants to stay on as my lawyer, it's fine with me."[17] As the court noted, a total lack of communication does not occur "if you just don't like what your lawyer is telling you."[18] Therefore, based on an assessment of the factors outlined in Mullin, we conclude that the district court did not abuse its discretion in denying Portis's motion for substitute appointed counsel.

B.

Portis next contends that the court erred in denying his motion for a new trial. In that motion, Portis asserted that there was "sufficient error" throughout the trial, that "manifest injustice" would occur if a new trial was not granted, and that the jury verdict was unsupported by the evidence.[19] However, in his brief, Portis contends that the district court abused its discretion in denying the motion because Portis was denied counsel of his choice and was denied effective assistance of counsel. Specifically, Portis argues that Charnock: (1) failed to present three potentially effective themes for defense of the case; (2) "offered curtailed and terse opening and closing statements;"[20] (3) "fail[ed] to attack [the Government's] witnesses vigorously in either cross examination or closing argument, if not in both, [which] was tantamount in this case to abandoning the field to the prosecution;"[21] (4) used the term "reasonable doubt" only once in her closing argument; and (5) treated Portis's motion for a new trial "as routinely as she treated the rest of her defense which she offered, filing the bare minimum written motion to comply with the requirement of the rule

_____

16 **Mullen**, 32 F.3d at 895.
17 J.A. at 100.

18 **Id.** at 103.
19 J.A. at 416.
20 Appellant's Br. at 21.

21 **Id.** at 22.

6

. . . ."[22] Because we discuss Portis's ineffective assistance of counsel claim in the following section, we limit our discussion here to whether the evidence supported the jury's verdict.

A review of the record discloses that the evidence presented clearly supported the jury's verdict, and therefore, the district court did not abuse its discretion in denying Portis's motion for a new trial. The government offered the testimony of an undercover police officer who personally purchased crack cocaine from Portis on two occasions, the testimony of another officer who observed the transactions, the testimony of Floyd, who stated that he supplied Portis with crack cocaine, and Portis's post-arrest admissions. In addition, the jury also had the benefit of weighing Portis's own testimony, in which he denied any wrongdoing and contradicted the police officers' statements. In light of this evidence, we conclude that the district court did not err in denying Portis's motion for a new trial.

C.

In addition to asserting ineffective assistance of counsel as one of the grounds on which the district court should have ordered a new trial, Portis also contends that it constitutes an independent basis for reversal of his conviction. In support of his argument, he incorporates his allegations of ineffective assistance of counsel from the preceding section.

Portis is aware that "a defendant may raise [his] claim of ineffective assistance of counsel in the first instance on direct appeal if and only if it `conclusively appears' from the record that [his] counsel did not provide effective assistance."[23] In addition, Portis concedes that "an evidentiary hearing below might reveal evidence of ineffective assistance beyond that described in [Portis's] brief . . . ."[24]

It does not "conclusively appear" from the record before us that

_____

[22] **Id.** at 23.
[23] **United States v. Smith**, 62 F.3d 641, 651 (4th Cir. 1995); Appellant's Br. at 24 (quoting Smith).

[24] Appellant's Br. at 24.

7

Charnock provided ineffective assistance of counsel. **25** Therefore, we refuse to disturb Portis's convictions or sentence on this ground.

III.

Based upon the foregoing, we affirm Portis's sentence and convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

_____

**25** Because it does not "conclusively appear" from the record that Portis was denied effective assistance of counsel, we similarly reject his argument that the court erred in denying his motion for a new trial based on Charnock's alleged deficient performance.

8