**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-4446**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES CARTER MCLEAN,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge; William A. Webb, Magistrate Judge.  (5:05-cr-00114-1F)

———————

Submitted:  February 13, 2007          Decided:  March 7, 2007

———————

Before WILKINS, Chief Judge, and WILKINSON and NIEMEYER, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

David W. Long, POYNER & SPRUILL, L.L.P., Raleigh, North Carolina, for Appellant.  George E. B. Holding, United States Attorney, Anne M. Hayes, Felice McConnell Corpening, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James Carter McLean was indicted in two counts for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924. After McLean informed the district court that he did not want to be represented by his appointed counsel, the court permitted him to proceed pro se. McLean thereafter pleaded guilty to Count II, and the court sentenced him to 294 months' imprisonment.

On appeal, McLean asks that his guilty plea be vacated because the district court refused to appoint counsel; McLean did not waive his right to counsel; and his guilty plea was not made knowingly and voluntarily. For the following reasons, we reject McLean's arguments and affirm.

I

Following his arrest, McLean was appointed counsel from the Office of Public Defender, who filed a motion to suppress evidence seized at the time of McLean's arrest. Due to a conflict of interest, counsel had to withdraw from the case, and the court appointed Attorney Michael Ramos to represent McLean. Ramos filed another motion to suppress, this one relating to statements that McLean made after being taken into custody. The district court denied both motions to suppress.

At his arraignment, McLean and Attorney Ramos informed the court that McLean did not want Ramos to represent him. McLean

2

told the court that he was dissatisfied with Ramos because Ramos had replaced his former attorney and because Ramos gave unsatisfactory answers to his questions. The court told McLean that he would not receive another lawyer and that his only choices were either to proceed with Ramos as counsel or to proceed on his own with Ramos as standby counsel. McLean said that he did not want Ramos as his lawyer. After the court conducted a Rule 11 colloquy, the court asked McLean how he wanted to plead, and McLean refused to respond. The court entered a plea of "not guilty" and told him again that Ramos would continue as McLean's standby counsel. In an order dated November 14, 2005, the court confirmed McLean's election to proceed pro se and continued trial of the case until January 2006. On January 13, 2006, McLean advised the court that he desired to plead guilty to Count II that charged McLean as a felon with possession of a firearm. Before accepting McLean's plea, the court again reminded McLean of his right to a jury trial and verified that McLean had conferred with Ramos as standby counsel. The court also determined that McLean understood the maximum punishment for the offense and the applicable advisory sentencing guidelines range. After the government moved to dismiss Count I, the court accepted McLean's plea.

Following sentencing, McLean filed this appeal.

3

McLean contends first that the district court abused its discretion in failing to appoint substitute counsel for him.

In response to the district court's questioning about McLean's election to fire counsel, McLean complained that Ramos was not "appointed to him," communicating in context that he preferred his original counsel who had to recuse herself. McLean also complained that Ramos would tell him "something different every time he comes to see me and I be asking him about certain questions, he can't never give me -- tell me nothing about the questions I'm asking." McLean made no other complaints and gave no information from which the court could have concluded that Ramos was giving McLean ineffective legal assistance. Cf. United States v. Mullen, 32 F.3d 891, 896 (4th Cir. 1994) (noting the defendant's specific allegations of counsel's wrongdoing and then rejecting them). Further, the record does not demonstrate a "total lack of communication" between McLean and Ramos. See United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988). To the contrary, McLean told the court that he and Ramos had been communicating in the days leading up to the November 2005 arraignment. See id.

It appears that McLean simply disliked Ramos, and based on the record, we can find no fault with the district court's refusal to appoint substitute counsel. See id. ("[A]n indigent defendant

. . . has no right to have a particular lawyer represent him and can demand a different appointed lawyer only with good cause").

## III

McLean also contends that he never waived his right to counsel so that his guilty plea, entered without the benefit of counsel, was invalid. According to McLean, the court should have appointed new counsel or required existing counsel to continue representing him.

Although the Sixth Amendment guarantees the right to assistance of counsel, a defendant may waive the right and elect to proceed pro se if "the waiver is knowing, intelligent, and voluntary." United States v. Singleton, 107 F.3d 1091, 1097 (4th Cir. 1997). Whether a defendant effectively waived his right to counsel is a question of law and subject to our de novo review, based upon an examination of the record as a whole. Id. at 1097 n.3.

The record in this case demonstrates that McLean voluntarily waived his right to counsel. Once the district court determined that a substitution of counsel was not warranted, the court required McLean to choose between representation by appointed counsel and proceeding pro se. McLean explicitly refused to proceed with Ramos as his counsel, stating, "I don't need him. . . . He ain't my lawyer. He didn't get appointed to me. I don't

want him." McLean unequivocally expressed his wish to waive counsel and to proceed pro se.

To assure that the waiver was knowing and intelligent, the court explained the charges and the possible punishments, and developed McLean's educational background, age, and general capabilities. See Gallop, 838 F.2d at 110. The court ascertained at the November 2005 arraignment that McLean was 29 years old and had attended school through the 11th grade and that he was competent to enter a plea. Nothing in McLean's background suggested to the court that he was incapable of understanding the decision to proceed pro se. Moreover, the court informed McLean of the nature of proceedings, explaining the charges and the maximum possible sentence that McLean faced, the consequences of pleading guilty, and the rights associated with a trial. The court also determined that McLean had received a copy of the indictment, had discussed the case with Ramos, and did not have any questions regarding his trial rights. Only after this exchange did the court permit McLean to discharge his counsel. We affirm the district court's conclusion that McLean's waiver of counsel was knowing, intelligent, and voluntary.

IV

Finally, McLean contends that his guilty plea must be vacated because the plea itself was not knowing and voluntary. He argues particularly that his plea was not knowing and voluntary because

6

the district court failed to apprise him of the consequences of pleading guilty.

A review of the record, however, amply demonstrates that McLean's guilty plea was knowing and voluntary. During the November 2005 hearing, the district court ascertained McLean's age and education level, and found that he was competent to plea. The court also engaged McLean in a full Rule 11 colloquy during which the court explained in detail the rights associated with a trial, the consequences of pleading guilty, and the sentencing process. The court also explicitly notified McLean that he could waive his right to appeal the denial of his motion to suppress if he agreed to plead guilty. And during the January 2006 hearing, the district court inquired, before accepting McLean's plea, that no one had threatened McLean or promised him anything in order to induce his plea. McLean testified that no such inducements were made. Indeed, nothing in the record suggests his McLean's plea was involuntary. Moreover, before accepting McLean's guilty plea, the court ensured that McLean knew what he was doing. The court reminded McLean of the previous colloquy regarding his trial rights, informing him again of his forfeiture of a jury trial by pleading guilty; of the charges and punishments McLean faced; and of the applicability of the advisory sentencing guidelines. Further, the court inquired and confirmed that McLean comprehended the rights he was waiving, that he had consulted with standby

counsel Ramos, and that he understood his charges and possible punishments.

Moreover, when McLean expressed some concern during the January 2006 proceeding about facing separate sentences for the two counts, the court explained the circumstances and the government dismissed Count I. This exchange also demonstrates both McLean's knowledge of, and active participation in, his plea.

In sum, we find that McLean knowingly and voluntarily entered his plea.

The judgment of the district court is

AFFIRMED.