**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5904

SOLOMON DUKES, JR., a/k/a Junior,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CR-94-589)

Argued: January 28, 1998

Decided: April 21, 1998

Before WILLIAMS, Circuit Judge, PHILLIPS, Senior Circuit Judge,
and FOX, Chief United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Clifford Wood, Jr., NELSON, MULLINS,
RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for
Appellant. Robert Hayden Bickerton, Assistant United States Attor-
ney, Charleston, South Carolina, for Appellee. **ON BRIEF:** J. Rene
Josey, United States Attorney, Charleston, South Carolina, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Solomon Dukes (a/k/a "Junior") of (1) conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C.A. § 846 (West Supp. 1997); (2) possession with intent to distribute cocaine in violation of 21 U.S.C.A.§ 841(a)(1) (West 1981); (3) possession with intent to distribute cocaine base in violation of 21 U.S.C.A. § 841(a)(1) (West 1981); and (4) engaging in a monetary transaction in criminally derived property in violation of 18 U.S.C.A. §§ 2 (West 1969), 1957(a) (West Supp. 1997). As a result of these convictions, he was sentenced to life imprisonment. Dukes appeals both his convictions and his sentence. Finding no reversible error, we affirm.

I.

On July 12, 1994, Dukes was named with seventeen other individuals in a thirty-five count indictment; he was charged in seven counts of the indictment. Those seven counts alleged conspiracy to distribute controlled substances, possession with intent to distribute cocaine and cocaine base, engaging in a monetary transaction in criminally derived property, and money laundering, violations of 21 U.S.C.A. § 841(a)(1) (West 1981), 21 U.S.C.A. § 846 (West Supp. 1997), 21 U.S.C.A. § 848 (West Supp. 1997), 18 U.S.C.A.§ 2 (West 1969), 18 U.S.C.A. § 1956(a)(1)(A)(i), (a)(1)(B)(i) (West Supp. 1997), and 18 U.S.C.A. § 1957(a) (West Supp. 1997).

Upon his arrest, Dukes retained William Runyon as counsel. Runyon represented him in a detention hearing on July 28, 1994. At that hearing, the magistrate judge determined that Dukes was a continuing danger to the community, and declined to grant a bond. After bond was denied, Dukes retained new counsel, Francis Cornely. Cornely represented Dukes at a second detention hearing held on October 4,

2

1994. At that hearing, Cornely presented more witnesses and, as a result, the magistrate judge determined that there was substantial evidence of the community's support for Dukes. Consequently, the magistrate judge conditionally granted bond. To obtain bond, Dukes was required to: (1) attain employment within two weeks of the hearing, (2) submit to electronic monitoring, and (3) live at his mother's house. Dukes was unable to obtain employment and remained in jail pending trial.

On November 1, 1994, Cornely made a motion to reopen the detention hearing on the ground that the Government had not met its burden of proving that Dukes was a danger to the community. In its response to that motion, filed on November 10, 1994, the Government said that "Dukes' counsel can be forgiven for such a self-serving . . . statement since he does not practice that frequently in federal court and he does not appear to be well-versed on the applicable authority relating to the issue of detention." (J.A. at 106 n.3.) Dukes, who had been assured by Cornely before he was retained that Cornely was both comfortable in and very familiar with the procedures of federal court, was distressed by the accusation of inexperience contained in the response.

As a result of the inconsistency between Cornely's and the Government's statements regarding Cornely's experience, Dukes felt that Cornely had lied to him and therefore had been retained on false pretenses. Although the attorney-client relationship had been progressing smoothly until that point, Dukes stopped communicating with Cornely and conveyed to him his desire to fire him and obtain a new attorney.

On November 14, 1994, Cornely filed a motion to withdraw as counsel of record and for a continuance of jury selection and trial. Cornely stated in his motion that Dukes "informed his counsel of record that he no longer had any confidence in his[attorney's] ability to represent him based on the remarks made by the Assistant United States Attorney in his Response to the Defendant's Motion to Re-Open Detention Hearing." (J.A. at 112.)

The district court held a hearing on the motion to withdraw on November 18, 1994, approximately ten days before jury selection for

3

Dukes' trial was scheduled to begin. During the hearing, the district court judge had a lengthy discussion with Dukes, questioning him extensively regarding the reason for his dissatisfaction with Cornely. During the colloquy between the district court and Dukes, Dukes stated that although Cornely had been representing him satisfactorily, the statement in the Government's response had shaken his confidence in Cornely's truthfulness. After its discussion with Dukes, the district court determined that the breakdown in communication that had continued for the eight days between the Government's response and the hearing did not appear to be irreconcilable and had not prejudiced Duke's defense. Therefore, the district court denied the motion to withdraw and gave Dukes three options: (1) to continue pro se, (2) to obtain another attorney who could be ready to proceed with jury selection in ten days, or (3) to reassert the motion to withdraw if the breakdown in communication was irrevocable.

Thereafter, the case proceeded to an eight-day trial before a jury. Dukes was convicted of four of the seven counts with which he had been charged: (1) conspiracy to distribute controlled substances in violation of 21 U.S.C.A. § 846; (2) possession with intent to distribute cocaine in violation of 21 U.S.C.A. § 841(a)(1); (3) possession with intent to distribute cocaine base in violation of 21 U.S.C.A. § 841(a)(1); and (4) engaging in a monetary transaction in criminally derived property in violation of 18 U.S.C.A. §§ 2, 1957(a). He was acquitted of two counts of possession with intent to distribute cocaine base in violation of 21 U.S.C.A. § 841(a)(1), and one count of money laundering in violation of 18 U.S.C.A. §§ 2, 1956(a)(1)(B)(i).

A United States Probation Officer prepared a presentence report to which Dukes' attorney filed objections. Timely responses to those objections were filed by the Government. A sentencing hearing was held on October 2, 1995, during which the district court addressed Duke's objections, adopted the modified presentence report, and sentenced Dukes. Dukes' four convictions were grouped together for sentencing. Because Dukes was held responsible for the equivalent of over 30,000 kilograms of marijuana, his base offense level under the sentencing guidelines was 38. See U.S. Sentencing Guidelines Manual § 2D1.1(c) (1995). Dukes received a sentence enhancement of four levels for his role as an organizer or leader in the conspiracy. See U.S.S.G. § 3B1.1(a). Finally, Dukes received an enhancement of two

4

levels for obstruction of justice because he suborned perjury and intimidated Government witnesses. See U.S.S.G. § 3C1.1. Therefore, his adjusted base offense level was 44. The district court determined that Dukes' criminal history category was II. See U.S.S.G. § 4A1.2. Therefore, applying the sentencing guidelines, the district court sentenced Dukes to life imprisonment. See U.S.S.G. Ch.5, Pt.A (mandating a life sentence at offense level 44).

II.

Dukes challenges his conviction on the ground that he was denied his Sixth Amendment right to counsel of choice when the district court denied his counsel's November 14, 1994, motion to withdraw. Additionally, he challenges his money laundering conviction on the ground that the Government did not properly demonstrate a connection to interstate commerce. Dukes also claims that trial counsel was ineffective in representing Dukes on count three of the indictment (possession with intent to distribute). Dukes also challenges his sentence. He claims that the district court improperly applied the obstruction of justice enhancement without making the requisite findings on the elements of the underlying crime of subornation of perjury. Dukes further contends that the district court miscalculated his criminal history category by considering one juvenile crime that should not have been considered separately from the present offense.

We address each of these challenges to the convictions and sentence in turn.

A.

Dukes first argues that "no compelling reason existed to deny . . . his Sixth Amendment right to counsel of his choice," and that therefore, the district court erred when it denied Cornely's motion to withdraw from continuing representation. (Appellant's Br. at 17.) We disagree that Dukes' Sixth Amendment rights were violated.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. We have noted that

5

"[a] defendant's right to have a lawyer of his or her own choosing is an essential element of the Sixth Amendment right to assistance of counsel." United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994). The individual's right to have counsel of his choosing, however, is not an absolute right. See id. Rather, the right is circumscribed by the need for the orderly administration of justice. The exercise of the right to counsel of choice may neither "obstruct orderly judicial procedure" nor "deprive courts of the exercise of their inherent power to control the administration of justice." United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988).

The denial of a motion to substitute counsel is reviewed under an abuse of discretion standard. See id. To determine whether the district court abused its discretion we consider three factors: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the defendant's complaint, and (3) whether a total breakdown in attorney/client communication had developed such that it prevented the attorney from putting forth an adequate defense. See Mullen, 32 F.3d at 895. Based upon our review of the record, consideration of these factors demonstrates that the district court did not abuse its discretion when it denied Dukes' counsel's motion to withdraw.

1. Timeliness

Dukes' counsel made his motion to withdraw four days after receipt of the Government's response alleging that counsel's inexperience in federal court contributed to his misunderstanding of applicable law. When considering the timeliness of a motion for withdrawal, however, the district court is entitled to consider not only its trial calendar but also the "public interest in proceeding on schedule." United States v. West, 877 F.2d 281, 286 (4th Cir. 1989).

The motion to withdraw was filed only ten days before jury selection was to begin in what was then-anticipated to be a multi-defendant, complex drug conspiracy trial. Substitution of counsel at that late date would likely have caused substantial delay in the proceedings. Such a delay not only would have altered the court's docket, but it also would have affected Dukes' co-defendants. Therefore, substitution of counsel at a time so close to scheduled jury selec-

6

tion would have significantly impeded the efficient administration of justice.

2. Adequacy of District Court Inquiry

When either the defendant or his attorney raises a substantial complaint about continuing representation, the district court must make a thorough inquiry into the cause of the difficulties. See Mullen, 32 F.3d at 896.

Here, the district court made a satisfactory inquiry into the cause of the lawyer/client conflict. The hearing, discussing the difficulties with the representation, lasted for forty-five minutes. During that time, the district court thoroughly questioned Dukes, Cornely, and the Assistant United States Attorney (AUSA) present for the hearing. Dukes revealed that the sole reason for his dissatisfaction with Cornely was the statement made in the Government's response asserting that Cornely was not experienced in federal court. Dukes indicated that he thought fellow lawyers would have insight into his lawyer's reputation. On that basis, he gave credence to the Government's statement regarding his lawyer's inexperience as an accurate reflection of Cornely's reputation among other lawyers, and he believed that Cornely had lied about his experience in federal court. Therefore, Dukes began to distrust Cornely.

During the hearing, the AUSA clarified that the Government's statement in its response was limited to the detention hearing context and that the Government thought that Cornely had done a good job representing Dukes in all other respects. The district court further questioned Dukes regarding his satisfaction level with the representation up until the point that the response brief was filed. Dukes indicated that the only reason for his dissatisfaction with Cornely was the distrust he felt in response to the Government's statement. Until he had received the Government's response to his motion, Dukes had had no complaints about Cornely and thought he had been doing a good job on his behalf.

In short, the district court took ample time to have a detailed conversation with Dukes and the attorneys regarding the problems with

7

the representation. The district court made an adequate inquiry into the cause of Dukes' dissatisfaction with counsel.

### 3. Extent of the Breakdown in Communication

The final factor we consider in determining whether the district court abused its discretion by denying a motion to substitute counsel is whether there was a total breakdown in communication between attorney and client such that it prevented the attorney from mounting an adequate defense. See Mullen, 32 F.3d at 896.

Dukes and his attorney had a breakdown in communication that lasted approximately eight days, from the date he reviewed the Government's response until the date of the hearing. At the hearing the district court gave Dukes the option of reasserting the motion to withdraw at a later date if he and his attorney could not settle their differences. Dukes never brought any continuing communication problems to the attention of the district court.

An eight-day discontinuation of communication between lawyer and client over the course of a five-month period of representation does not create a substantial impediment to the attorney's ability to put forth an adequate defense. Furthermore it is clear from the record that Cornely and Dukes discussed important issues during the course of the trial and that the defense mounted by Cornely led to Dukes' acquittal on three of the counts with which he was charged. Thus, we conclude that the eight-day interruption in communication did not prevent an adequate defense.

### 4. Conclusion

Because we conclude that Dukes' counsel's motion to withdraw was not timely, the district court made careful and thorough inquiry into the reasons for Dukes' dissatisfaction with his counsel, and the eight-day breakdown in communication did not inhibit counsel's ability to provide an adequate defense, the district court did not abuse its discretion when it denied Cornely's motion to withdraw. Thus, there was no violation of Dukes' Sixth Amendment right to counsel.

8

B.

Dukes next challenges his conviction under 18 U.S.C.A. § 1957 (West Supp. 1997). That section provides:

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished . . .
>
> . . . .
>
> (d) The circumstances referred to in subsection (a) are --
>
> (1) that the offense . . . takes place in the United States or in the special maritime and territorial jurisdiction of the United States; or
>
> (2) that the offense . . . takes place outside the United States and such special jurisdiction, but the defendant is a United States person . . .
>
> . . . .
>
> (f) As used in this section --
>
> (1) the term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds . . . by, through, or to a financial institution . . . .

18 U.S.C.A. § 1957 (West Supp. 1997).

Dukes claims that his conviction cannot stand because the Government did not put forth sufficient evidence that the transaction in question substantially affected interstate commerce. He relies upon United States v. Lopez, 115 S. Ct. 1624 (1995), as authority for this proposition.

9

Dukes' counsel misapprehends the reach of <u>Lopez</u> . <u>Lopez</u> contemplates the power of Congress to enact legislation under the Commerce Clause, and does not address the sufficiency of the evidence in a particular case. <u>See Lopez</u>, 115 S. Ct. at 1626. Under the correct standard for determining the sufficiency of the evidence, Dukes' assignment of error lacks merit.

The elements of the crime under 18 U.S.C.A. § 1957 (West Supp. 1997) are: (1) the defendant knowingly, (2) engaged in a monetary transaction, (3) involving criminally derived property valued at more than $10,000. <u>See United States v. Smith</u>, 44 F.3d 1259, 1270 (4th Cir. 1995). Here, Dukes challenges the sufficiency of the evidence on the second element because "monetary transaction" contemplates an effect on interstate commerce. <u>See</u> 18 U.S.C.A. § 1957(f)(1).

In determining whether the evidence presented at trial was sufficient to support a conviction, the jury's verdict must be upheld on appeal if there was substantial evidence to support the verdict. <u>See Glasser v. United States</u>, 315 U.S. 60, 80 (1942). In determining whether the evidence presented was substantial, we view the evidence in the light most favorable to the Government and inquire whether a "reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." <u>United States v. Burgos</u>, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), <u>cert. denied</u>, 117 S. Ct. 1087 (1997).

There is substantial evidence to support the jury's finding that Dukes engaged in a monetary transaction that affected interstate commerce. The Government's proof at trial was that Dukes used cash derived from the sale of drugs to purchase a BMW M-3 automobile. The act of purchasing an automobile undoubtably has the requisite effect on interstate commerce to pass muster under 18 U.S.C.A. § 1957(f)(1) (West Supp. 1997). Therefore, a reasonable fact finder could have found beyond a reasonable doubt that Dukes engaged in a monetary transaction, the challenged element of the offense. Accordingly, Dukes' money laundering conviction must stand.

C.

Additionally, Dukes claims that trial counsel was ineffective. Generally, claims of ineffective assistance of counsel can be raised only

10

during post-conviction relief. If, however, "`it conclusively appears in the trial record itself that the defendant was not provided . . . effective representation,'" then we may recognize ineffectiveness of counsel on direct appeal. United States v. Fisher, 477 F.2d 300, 302 (4th Cir. 1973) (quoting United States v. Mandello, 426 F.2d 1021, 1023 (4th Cir. 1970)).

Although Dukes' counsel was unsuccessful in winning an acquittal on all of the counts with which Dukes was charged in the indictment, the record does not conclusively demonstrate that counsel provided ineffective assistance. Quite the contrary, counsel persuaded the jury to acquit Dukes on three of seven charges. Clearly, a case in which counsel appears on the face of the record to be competent, and in which counsel successfully wins acquittal for his client on several counts of the indictment, does not satisfy the standard recognized in Fisher as ineffective assistance of counsel cognizable on direct appeal. See 477 F.2d at 302. Therefore, Dukes' claim of ineffective assistance of counsel is, at best, premature.

D.

Dukes next challenges his sentence. First, he asserts that the enhancement for obstruction of justice was improperly applied. He then asserts that the court miscalculated his criminal history category. Finding no error in sentencing, we affirm.

1.

Dukes argues that the district court improperly applied the obstruction of justice enhancement during his sentencing. See U.S. Sentencing Guidelines Manual § 3C1.1 (1995). He contends that the district court did not make sufficient factual findings in support of the enhancement. We disagree.

The presentence report prepared by the United States Probation Office and adopted by the district court contains three paragraphs regarding the adjustment for obstruction of justice. Dukes asserts that the district court made insufficient findings supporting the adoption of ¶¶ 42, 43, and 44 of the presentence report.* Those paragraphs

_____

*Dukes also challenges the sufficiency of the evidence presented to support the district court's determination. We find that the testimony and

11

explain that an obstruction of justice enhancement is warranted because Dukes sponsored perjured testimony in an effort to obtain bond before trial, intimidated a witness before trial, and threatened a witness causing him to file a false affidavit.

Specifically, ¶ 43 notes that witnesses testifying on his behalf provided false testimony regarding his ownership of a BMW and his employment with the Longshoreman's Union in an effort to help him procure bond. Dukes asserts that United States v. Dunnigan, 507 U.S. 87 (1993), requires that a sentencing court make specific findings on the elements of subornation of perjury before it applies the obstruction of justice enhancement under § 3C1.1. Dunnigan applies only when the defendant commits perjury during the course of his own trial. See id. at 95 ("[I]f a defendant objects to a sentence enhancement resulting from [his] trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same under the perjury definition we have set out."). Therefore, Dunnigan is not controlling in Dukes' case, because his obstruction of justice enhancement was not based upon his own testimony during trial.

Additionally, Dukes' assertion is not well founded because the district court specifically adopted the factual findings in the presentence report over defense counsel's objection after hearing argument. See United States v. Love, Nos. 95-5760 & 95-5825, 1998 WL 15819, at *10 (4th Cir. Jan. 20, 1998) (allowing district court to adopt findings in the presentence report). Paragraph 43 of the presentence report notes that Dukes sponsored false testimony designed to mislead the court during his detention hearing. The criminal offense of suborning perjury is defined in 18 U.S.C.A. § 1622 (West Supp. 1997) and states "[w]hoever procures another to commit any perjury is guilty of subornation of perjury." A witness who testifies under oath or affirmation commits perjury when he "gives false testimony concerning

---

affidavits considered in conjunction with the presentence report provided an adequate basis upon which the district court could find by a preponderance of the evidence that the allegations contained in the presentence report were true.

12

a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Dunnigan, 507 U.S. at 94. Paragraph 43 of the presentence report provides a factual basis for all of the required elements of subornation of perjury. The paragraph states that Dukes sponsored willfully false testimony about a material matter in a detention hearing, and that the false testimony actually occurred under oath at the hearing.

Applying the same rationale, Dukes' assertion that the district court did not make proper findings regarding ¶ 42 is equally groundless.

Even if the factual findings in the presentence report were insufficient to support an obstruction of justice enhancement on the specific ground of subornation of perjury, see U.S.S.G. § 3C1.1, or the incident of witness intimidation listed in ¶ 42, there was a third adequate ground supporting the district court's determination. Dukes never objected to ¶ 44 of the presentence report which described an incident in which Dukes, through physical intimidation, arranged for a witness to file a false affidavit. When, as here, the obstruction of justice enhancement is warranted on several alternative grounds, so long as one of the grounds is proper, the enhancement stands. See United States v. Ashers, 968 F.2d 411, 414-15 (4th Cir. 1992). Therefore, even if the findings regarding Dukes' subornation of perjury during his detention hearing or first incident of witness intimidation are faulty, the obstruction of justice enhancement rests on the allegation contained in ¶ 44. Because the obstruction of justice enhancement is supported by an alternative, valid rationale, we affirm its application.

2.

Dukes additionally challenges his sentence on the ground that the district court improperly calculated his criminal history category, see U.S.S.G. § 4A1.1, by separately counting a juvenile offense that represented conduct that was actually part of the instant offense, see U.S.S.G. § 4A1.2(a)(1) (excluding conduct that is part of the instant offense from the definition of "prior sentence"). If this crime were omitted from Dukes' criminal history, his criminal history category would be I rather than II. See U.S.S.G. Ch.5 pt.A.

Because the district court properly determined that Dukes' offense level is 44, under either criminal history category I or II the manda-

13

tory sentence is life imprisonment. A district court's sentencing error is subject to harmless error analysis, and remand is not required if "the error did not affect the district court's selection of the sentence imposed." Williams v. United States, 503 U.S. 193, 203 (1992); see also United States v. McCrary, 887 F.2d 485, 489 (4th Cir. 1989) (noting that error in calculating criminal history category warrants remand only when possible sentencing ranges are different).

Because the only possible sentence under criminal history categories I and II was identical, if the district court erred in its calculation of the criminal history category, that error was harmless, and thus we affirm Dukes' sentence.

III.

For the reasons stated above, we affirm Dukes' convictions and sentence.

AFFIRMED